## UNITED STATES v. WINGERT.

### No. 4867.

District Court, E. D. Pennsylvania.
Feb. 6, 1932.

Paul Freeman, Asst. U. S. Atty., and Edward W. Wells, U. S. Atty., both of Philadelphia, Pa.

Francis B. Biddle, of Philadelphia, Pa., for defendant.

Before DICKINSON and KIRKPATRICK, District Judges.

DICKINSON, District Judge.

The motive and purpose of this proceeding calls for a rather lengthy preamble.

Those accused of crime have two dearly bought rights now confirmed to them by the practice of a quarter of a millenium. One is the right to a fair trial, and the other to the equal and even more valuable right of protection from arrest except on probable cause and from the ignominy, loss of time, and expense following unfounded accusations. The latter is afforded by the provision of the Fourth Amendment and the practice that no one shall be put on trial until some responsible official or tribunal has found that he should be so tried. Ordinarily this protection is afforded (or at least heretofore has been) by the requirement (1) of a complaint under oath before any arrest; (2) a binding over by a committing magistrate; (3) the right to invoke the judgment of a court into the causes of a commitment; and (4) the finding of a grand jury. There is a fifth protection which, when given, is of more practical value than any of the others. This is afforded by the refusal of a fair-minded prosecuting attorney to press an unfounded charge. This official has an opportunity to know the facts and can bring to his decision a judgment trained by experience. Whether

for good or ill we have lost the benefit of this. The drift to what is known as the policy of "centralization of power" has shifted the decision of what prosecutions shall be brought or pressed from the United States Attorney who knows all the facts to an official 150 or 3,000 miles away who does not and cannot know them. The latter is per force compelled to decide the question upon some broad general policy which, however sound, may be inapplicable under the particular facts of a particular case. The United States Attorney, who is on the ground, is in consequence powerless to pass upon the propriety of the prosecution, and the accused, not only loses a right of great value to him, but what concerns directly the courts our lists are cluttered up with cases which the developments of the trial show should never have been brought. The ordeal of trial to which an innocent defendant is thus subjected is no light matter, and emphatically so in a court of the United States. In a county court he is afforded another real protection in the fact that he is tried by a jury to whom he is not altogether unknown. In a United States court he is taken to a distant place for trial, and is among strangers to whom he is known only as one accused and hence probably guilty of a more or less heinous offense. His name is bruited about in the newspapers as a felon and prospective convict, and his offense described in the lurid verbiage of an indictment. It is true that the language of indictments has been somewhat softened, and he is not said, as formerly, to have been "instigated by the Devil" but even yet indictments are by no means complimentary in phraseology. The charge against him usually starts from some private source, often in hiding, as the writer of an anonymous letter. This goes to a highly trained band of official investigators whose efficiency is measured by the number of prosecutions brought. These men are chosen for their capacity to become real sleuth hounds of the law, and they are trained to the minute. What is expected of them, and this is backed by the professional instinct, is that a case be built up and presented against the accused. They are all men of a high type, considerate, and fair, but they are human, and failure means professional and official defeat. The preparation for the trial is often at a cost which reaches the proportions of what to many people would be a fortune. The accused is forced to go to a corresponding expense in the preparation of his defense. Unless he does so, no matter how innocent, he is doomed. The mere expense to which he is thus subjected is in itself no light

matter. There is another feature of practical moment. If a hearing be given the defendant, he has some knowledge which is a great aid in the preparation of his defense. If an indictment is secretly found and a bench warrant follows, a defendant may be hauled into court by "railroad." We are glad to bear witness that this is not done, but the power is fraught with the possibilities of frightful abuse. Of course it may be objected to all this and will be that under our system of administering legal justice there is more danger of the escape of the guilty than the conviction of the innocent. This, however, is aside from the mark, for we are not discussing trials but protection from unfounded charges, and as a matter of pure policy the elimination of trivial and unfounded accusations will not obstruct but will aid in the conviction of the really guilty.

Since the ruling in United States v. Thompson, 251 U. S. 407, 40 S. Ct. 289, 64 L. Ed. 333, the practice has grown up of having those who are to be tried indicted in the first instance by a grand jury. All the protection before given accused persons is thus cut out except that given by the grand jury. This changes our system from what we had to the "J'Accuse" system. We can readily understand that this is a great convenience to the United States Attorney and the inspector officers. It is, however, at the cost of ignoring the United States Commissioners and of denying to the accused the right, through a denial of the opportunity, to get the judgment of the court upon the question of probable cause. It may be said, of course, that the accused still has the protection of a finding by the grand jury as before, but this becomes no more than a star chamber proceeding with a carefully prepared prima facie case submitted with all suggestions of what may be behind it shut out. When the United States Attorney has submitted and the grand jury has found a true bill, the defendant cannot be tried because not in court. So far as any one has been able to suggest, there is no other way of getting him before the court than by the issuance of a bench warrant. The question then arises of whether one should issue as a matter of course or whether the court may lawfully exercise its judgment before issuing it. In practice such bench warrants are issued whenever there is, as there usually is, justification for the issue.

This proceeding has been brought by the United States Attorney at the suggestion of the court to have the naked question of power discussed and determined. The question of

the propriety of the exercise of the power does not arise. Is the court bound to issue a bench warrant, or may it first inquire into the occasion for its issuance?

To get down to the question of power we may thus assume that when all the facts are disclosed it will appear that the accused should not be put upon trial; that no commissioner or committing magistrate would hold him for trial, and that the court, after hearing the evidence, is of opinion that there is no case made out against him. These are all assumptions, but the question before us is whether, if such be the case, the court is nevertheless bound to issue a bench warrant. The grand jury, however, has found a true bill, and hence "probable cause" has been found. Is this conclusive? If the court has no power to refuse a bench warrant (which is the precise and only question before us), of course it must issue, but there is something repellant in the thought that a court is bound, without inquiry, to deprive any one of his liberty when upon such inquiry the judgment of the court would be that such deprivation would be unwarranted. Of course, again there are cases in which the ordinary course of the practice of administering legal justice warrants holding an accused for trial without any preliminary inquiry, as in the cases of presentments by a grand jury and cases in which the court itself directs a party to be so held. These are, however, of that type of exceptions which are said to prove the rule, because in these cases it is self-evident that the accused should stand trial.

The instant case has been chosen merely because it was a case in which no preliminary inquiry has been made, but in which there was no special reason one should not be made. As before stated, the question raised is the naked question of whether the court has any discretionary control over the issuance of a bench warrant or must issue it.

The very capable representative of the United States Attorney's office wishes to have this question squarely met and decided and thus stands for the proposition that the court has no discretionary power. In his view the effect of a concession of the power would be to nullify the action of the grand jury. Just here care must be taken not to confuse the question of the existence of the power with the other question of the propriety of its exercise. There is, we think, no doubt that a true bill is evidence of probable cause, but in the somewhat analagous case of a removal warrant the indictment, although evidence, is concededly only prima facie evidence. In

such cases the court before issuing its process goes into an inquiry. The court, it is true, does not usurp the functions of the trial court by going into the question of guilt, but it does determine the other question of whether the defendant should be sent to the other jurisdiction for trial. Likewise, in bench warrant cases, there would be no thought of finding guilt or innocence, but to determine the other question of whether the accused should be put on trial.

The United States Attorney puts the question before us on what seems to us the wrong basis when he views it as the question of whether the accused has the right to a preliminary hearing before an indictment may be submitted to a grand jury. This question has been settled for us by the ruling in the Thompson Case, supra. There is no such absolute right, as the United States Attorney may submit a bill without a hearing and without the previous leave of the court. Nor is the case of United States v. Fitzgerald and Smith, 29 F.(2d) 573 (ruled by this court) in point. There is no doubt of the power, because it is the common practice, of the court on habeas corpus, to review a commitment by a commissioner and to discharge the relator if probable cause does not appear, but this has never been known to be done after indictment. The reason for the difference is obvious. The question of power so easily slides into the other question of the propriety of its exercise, that it is difficult to keep them separated in thought. If a bench warrant should issue, of course it will be issued, but the question (already several times stated) is whether the court is bound to issue it, although the judicial judgment is that it should not issue. The power on proper occasion not to issue it carries the power to inquire whether it should issue. The possession of this latter power must at least in some degree be possessed as in a case in which the question of identity is raised. The government stands squarely for the proposition that the act of the court is purely ministerial and in no sense judicial. The proposition that a grand jury may on its own motion present any one is undoubtedly sound, and no court would refuse its process to bring the accused into court. The practical difficulties of giving control over bench warrants suggested are more fanciful than real. The discretion, if it exists, is necessarily a judicial discretion and is bound to be properly exercised. All this is conceded. The question raised, we repeat, is whether a court is bound to issue its warrant for the arrest of a man when in the proper exercise of its judicial judgment it

finds that he should not be arrested. The Fourth Amendment and our proud boast that we are the subjects of laws and not of men has behind it the actual experiences of the people whose system of criminal jurisprudence we have in large part appropriated. It means that no man, and a judge no more than any other man, governs us, nor can he deprive us of our liberty. We are governed by the law, and "no warrant" (there is no qualification) can lawfully issue for our arrest except as the law prescribes. "J'Accuse" no more than "lettres de cachet" process can touch us.

It is not meant by this that the Fourth Amendment forbids the issuance of bench warrants. Its words, it is true, are that "no warrant" shall issue without a finding of probable cause and a supporting oath for which the affiant may be held responsible, and a bench warrant is a warrant. Constitutions, however, no more than statutes, mean what they say. They mean what they mean, and they mean what the courts find them to mean. Time out of mind bench warrants have issued without a preliminary oath. This means that the Fourth Amendment does not forbid the practice. A court may and on innumerable occasions the courts have so issued bench warrants. No precedent, however, has been brought to our notice, and the industry of counsel has discovered none, for a court to issue a bench warrant after the court has found that a bench warrant should not issue. The proposition advanced by the United States Attorney that the court is bound to issue a warrant which the court thinks should not issue is at least somewhat startling.

We have had the benefit of a very helpful discussion of the question involved both by the United States Attorney who argued in support of the petition and Mr. Biddle who, as amicus curiæ, has presented the opposing view. Want of space prevents us from following these arguments. They have taken in the question of writs of mandamus. We hope a way will be found to meet the real question raised without raising any procedural questions. So far as an expression of our wishes can promote this, our wish and hope is that the conclusion we have reached may be reviewed and a ruling made which will settle the question for us. The United States Attorney has asked us for a bench warrant which we have refused. This is in effect a final judgment as much as the quashing of an indictment, and we hope is the proper subject of review.

If, however, there is no way of raising the question by appellate review other than by mandamus, we express our entire willingness to have it so raised.

All the members of the court have joined in the refusal of the bench warrant in order that the question may be settled. There could be no appellate review except of a refusal to issue, and hence all join in the order made.

The petition for a bench warrant is denied as presented, with leave to the United States Attorney to submit proof of facts so that the bench warrant, if issued, will have the support required by the Fourth Amendment.

Petition denied.