Raymond CRUMP, Jr., Appellant,

v.

Sam ANDERSON, Superintendent, District of Columbia Jail, Appellee.

No. 19071.

United States Court of Appeals
District of Columbia Circuit.

Argued March 18, 1965.

Decided June 15, 1965.

Dissenting Opinion Filed July 8, 1965.

———◆———

Mr. Jerome Shuman, Washington, D. C., with whom Mrs. Dovey J. Roundtree, Washington, D. C., was on the brief, for appellant.

Mr. Allan M. Palmer, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge:

The appellant after a hearing on November 9, 1964, was denied a writ of habeas corpus. It was developed at the hearing that Crump had been detained pursuant to an indictment, dated October 19, 1964, wherein the grand jury had charged him with murder in the first degree. He had been committed to jail on October 20, 1964. He has here contended that the indictment could not validly operate to deprive him of a preliminary hearing pursuant to the provisions of FED.R.CRIM.P. 5.

Attorney Roundtree having entered appearance for Crump on October 28, 1964, Crump was arraigned on October 30, 1964, a plea of not guilty was entered, and a trial date of January 11,

1965 was set on motion of defense counsel.

Then, on October 30, 1964, Crump filed his petition for a writ of habeas corpus, naming as respondent, Donald Clemmer, Director of the Department of Corrections. He filed an amended petition on October 31, 1964, directed against Sam Anderson, Superintendent of the D. C. Jail. He filed a further amended petition on November 3, 1964. He did not attack the validity of the indictment. Rather, he charged that, following his arrest on October 12, 1964, the police had beaten him and that there had been irregularities in the proceedings which antedated the indictment. When first presented before the United States Commissioner at 4:30 P.M. on October 12, 1964, Crump was advised of his rights, after which his hearing had been continued for the purpose of contacting the Legal Aid Agency. Under our Code,[1] a coroner's inquest is mandatory in a situation such as existed here. The inquest was held on October 19, 1964, with Legal Aid counsel present but asking a continuance. The coroner pointed out that his office had given notice to Legal Aid counsel of the scheduled inquest. "You are familiar with the coroner's office and you know that you can subpoena witnesses, you can call witnesses and the Coroner's Jury will hear those witnesses. You had opportunity to line up anyone you wanted to."

On that same October 19, 1964, a grand jury had returned its indictment charging Crump with the murder of one Mary Pinchot Meyer.

Crump again appeared before the Commissioner later in the day of October 19, 1964 at which time the Government offered to proceed at once with a preliminary hearing but Crump requested and was granted a continuance until October 23, 1964. He again appeared before the Commissioner on October 23, 1964, at which time the Commissioner was informed of the indictment of October 19, 1964. Crump's counsel informed the *habeas* court, "the Commissioner found no reason to hold any proceeding, reasoning that because of the indictment it was unnecessary and that it [the Commissioner's hearing] would be moot."

In its return and answer to the rule to show cause the Government had denied that Crump had been mistreated by police and that he had been illegally detained. The Government further answered that since Crump had been indicted, arraigned and had been committed by the District Court pursuant to the indictment, Crump was detained on that account and in regular course. The answer also averred that Crump was not in custody of the Superintendent of the Jail by virtue of an order of either the coroner or the Commissioner. Accordingly, since Crump was thus lawfully detained as the Government contended, it was prayed that the District Court dismiss the petition for a writ of habeas corpus and discharge the rule to show cause.

A hearing was held on November 9, 1964. The District Judge specifically found [2] that Crump had been committed to the custody of the jailer pursuant to

---

1. D.C.CODE § 11–1902 (Supp. IV, 1965) provides that with certain exceptions, "the coroner shall hold an inquest over the body of each person found dead in the District when the manner and cause of death is not already known as accidental or in the course of nature."

§ 11–1903 provides that "The coroner may summon witnesses from any part of the District to appear before him for the purposes of giving evidence, and may compel their attendance by attachment. * * *"

§ 11–1904 provides that upon a coroner's inquest where a person is charged with having unlawfully caused a death the coroner shall, *inter alia*, "return to the United States District Court the inquisition and testimony and recognizance taken by him."

2. He also found that Crump's claim he had been mistreated by police was "totally frivolous," observing orally that the Government had proved "beyond any question of doubt whatever that this defendant was not beaten or mistreated in any way whatever."

the indictment and arraignment thereunder in criminal case No. 930–64. The District Judge further found that the petitioner's request for subpoenas to compel the attendance of certain witnesses at his preliminary hearing was properly denied in that Crump had been unable to state any facts to support his assertions as to what evidence he might have expected to adduce through such witnesses, and his counsel "had not contacted the witnesses sought and was unable to represent to the court the nature of these witnesses' testimony." The District Court concluded that (1) the petitioner had failed to sustain his burden of proving that his custody was illegal, and on the contrary, (2) petitioner "is legally detained."

## I

At no time has this appellant attacked the validity of the indictment. Rather, he here contends that he was entitled as a matter of right to a preliminary hearing before the Commissioner, pursuant to "the legislative mandate expressed in Rule 5(c) of the Federal Rules of Criminal Procedure."

■ It is fundamental in our law that no person shall be held to answer to a charge of crime unless there be probable cause to believe that an offense has been committed and that the person charged has committed it. The Supreme Court has told us in Ex Parte United States:

"It reasonably cannot be doubted that, in the court to which the indictment is returned, the finding of an indictment, fair upon its face, by a properly constituted grand jury, con-

clusively determines the existence of probable cause for the purpose of holding the accused to answer." (Emphasis added.)[3]

Part III of the Federal Rules of Criminal Procedure deals with "indictment and information." Rule 9(b) (1) provides that a warrant shall command that the defendant be arrested and brought *before the court*. Rule 9(c) (1) requires that the officer bring the arrested person promptly *before the court* to which the officer shall also make his return of execution. There is not the slightest suggestion that one accused by way of indictment shall be accorded a preliminary hearing before a commissioner for the simple reason that the grand jury has already determined the existence of probable cause.

■ Even if all the evidence before the grand jury was in the nature of "hearsay," an indictment may not be quashed, and surely no United States Commissioner is empowered to pass upon the merits or the substance of, or the support for the indictment.[4] Mr. Justice Black dealt with the problem thus:

"If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a

---

3. 287 U.S. 241, 250, 53 S.Ct. 129, 131, 77 L.Ed. 283 (1932). There the Supreme Court made absolute its writ of mandamus requiring District Judge Dickinson to set aside his order which had denied an application for a bench warrant in United States v. Wingert, 55 F.2d 960 (E.D.Pa.1932). Judge Dickinson in Wingert had reviewed the results "of ignoring the United States Commissioners and of denying to the accused the right, through a denial of the opportunity, to get the judgment of the court upon the

question of probable cause." 55 F.2d at 961. In detailing the reasons for his refusal to issue a bench warrant after an indictment had been returned, he argued much as has the appellant in the instant action.

4. A commissioner is simply an officer of the court, and a preliminary examination before him is not a court proceeding. Todd v. United States, 158 U.S. 278, 282, 283, 15 S.Ct. 889, 39 L.Ed. 982 (1895).

legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." [5]

So it is that our federal courts uniformly have held that there is no necessity for a preliminary hearing after a grand jury has returned an indictment.

"The purpose of a preliminary hearing is to determine whether or not there is probable cause to believe that an offense has been committed and that the defendant has committed it. If the Commissioner so finds, the defendant is then held to answer in the District Court. There is, however, no requirement in the Constitution or otherwise that a defendant be given a preliminary hearing before he may be brought into a court already having jurisdiction of the charge against him." [6]

Again, in Boone v. United States, we find:

"On the other point argued by the appellant, that he did not have a preliminary hearing before the United States Commissioner, there is no necessity for such hearing after a grand jury has returned an indictment, as was the case here." [7]

The principle so stated *after* the adoption of the Federal Rules of Criminal Procedure is thus seen to differ in no respect from its pronouncement and application before the promulgation of the Rules. See, e. g., Barber v. United States, where Judge Parker wrote:

"There is nothing in the point that the prisoner was not granted a preliminary hearing or given sufficient time to prepare his defense. The only purpose of a preliminary hearing is to determine whether there is sufficient evidence against an accused to warrant his being held for action by a grand jury; and, after a bill of indictment has been found, there is no occasion for such hearing." [8]

To like effect the law was so stated in this court (Groner, Edgerton, Rutledge, JJ., sitting) in Clarke v. Huff [9] which reviewed a District Court order discharging a writ of habeas corpus. The appellant argued that his rights were violated in that he had been indicted by a grand jury without a warrant having been issued for his arrest prior to the indictment and without a preliminary hearing having been afforded to him.

"There is no constitutional right to a preliminary hearing prior to indictment or *prior to trial.* * * * [10]

5. Costello v. United States, 350 U.S. 359, 363. 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956).

6. Burrett v. United States, 270 F.2d 772, 775 (8 Cir. 1959).

7. 280 F.2d 911 (6 Cir. 1960); James v. Lawrence (dictum), 84 U.S.App.D.C. 355, 176 F.2d 18 (1949), cited as the basis for this court's ruling in Lucas v. United States. 91 U.S.App.D.C. 278, 201 F.2d 182 (1952).

8. 142 F.2d 805, 807 (4 Cir.), cert. denied, 322 U.S. 741, 64 S.Ct. 1054, 88 L.Ed. 1574 (1944); United States ex rel. Dilling v. McDonnell, 130 F.2d 1012 (7 Cir. 1942); and see Garrison v. Johnston, 104 F.2d 128 (9 Cir.) cert. denied, 308 U.S. 553, 60 S.Ct. 107, 84 L.Ed. 465 rehearing denied, 308 U.S. 636, 60 S.Ct. 137, 84 L.Ed.

529 (1939). In the Garrison case, 104 F.2d at 130, the court observed that:

"The fact that there was no preliminary examination does not entitle the appellant to release on the ground that 'he was thereby deprived of his constitutional guaranty to be confronted by the witnesses' against him. Goldsby v. United States, 160 U.S. 70, 73."

9. 73 App.D.C. 351, 119 F.2d 204 (1941).

10. Citations relied upon for this proposition have been omitted except that we note Goldsby v. United States, 160 U.S. 70, 73, 16 S.Ct. 216, 218, 40 L.Ed. 343 (1895), where the Court said:

"The contention at bar, that, because *there had been no preliminary examination* of the accused, *he was thereby deprived of his constitutional guaran-*

Nor is there a constitutional right to be apprised of grand jury proceedings by a warrant issued for arrest prior to such proceedings." (Emphasis added.)

Recently the Supreme Court had before it for construction, the effect of the language in the statute of limitations on the felony of willfully attempting to evade federal income taxes. The Court pointed out that an indictment must be returned within six years of the date of the commission of the offense except that where "a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner. * * * " The Court observed:

"Furthermore, we think that the Government must proceed through the further steps of the complaint procedure by affording the defendant a preliminary hearing as required by Rule 5, *unless before the preliminary hearing is held, the grand jury supersedes the complaint procedure by returning an indictment.*" (Emphasis added.) [11]

█ It would appear from the authorities cited and from numerous cases which need not now be mentioned, that this appellant was not denied a right to a preliminary hearing before the Commissioner since the finding of the indictment had determined the existence of probable cause. Regardless of when the question has been presented in circumstances such as have been shown on this record, from earliest days down to this very month, the result has been the same. The District Court correctly denied the writ.

## II

Appellant would nonetheless claim that he was entitled to utilize the preliminary examination procedure referred to in the *Jaben* case as a means of "discovery." The record shows that when Crump was arrested on the afternoon of October 12, 1964, Crump was informed that an inquest would be held. A continuance was ordered that the Legal Aid Agency might be notified. Its attorneys presently entered the case. On the 13th, as required by our statute,[12] a coroner's jury was sworn in, and the coroner scheduled the inquest before him for 11 A.M. on October 19, 1964. At least two days prior thereto, Legal Aid attorneys knew that the inquest had been so set. On the morning of October 19, 1964, the coroner had before him the results of the autopsy which had been performed upon the body of the victim by the deputy coroner. The coroner's jury was present. Legal Aid attorneys then asked "for a continuance and issuance of proper subpoenas." Those attorneys had not themselves caused subpoenas to be issued. The inquiry before the coroner is limited.[13] The inquest involved a determination as to "when, where, how and after what

---

ty to be confronted by the witnesses, by mere statement, demonstrates its error." (Emphasis added.)

The Supreme Court has never spoken otherwise, for granting the power of the grand jury and the right of the Government to initiate prosecutions, the rights of the accused will be protected at trial. Cf. United States v. Thompson, 251 U.S. 407, 414, 415, 40 S.Ct. 289, 64 L.Ed. 333 (1920). And see Ex Parte United States, *supra* note 3, 287 U.S. at 250–251, 53 S. Ct. 129.

11. Jaben v. United States, 381 U.S. 214, 220, 85 S.Ct. 1365, 1368 (1965), 14 L.Ed. 2d 345; in the Jaben case the Government had obtained a superseding indictment before the preliminary hearing was scheduled to take place. Such was the situation on the instant record.

12. *Supra* note 1.

13. This court in some circumstances has viewed a coroner's inquest as affording an opportunity for ascertainment of the nature of the evidence upon which the Government might rely in a later trial of one accused of murder. See, e.g., Carter v. Schweinhaut (No. 19,044, decided by order entered Feb. 2, 1965). There we denied mandamus to compel the respondent judge to order a preliminary hearing. The petitioner-accused could have called witnesses in his own behalf but did not do so. "Probable cause" was evident in any event.

manner the said Mary Pinchot Meyer came to her death." That inquest went forward, not pursuant to Federal Rules of Criminal Procedure—but because of the requirements of our Code.

A detective of the Metropolitan Police Department testified that pursuant to a "look-out" he responded to the scene where he found the lifeless body of Mrs. Meyer. She had been shot in the head and in the chest while walking during the noon hour on a towpath adjacent to a canal which parallels a highway on the one side and the Potomac River on the other. He testified concerning his conversation with Crump who had been identified to him by an eyewitness. Crump accounted for his presence in the area in that he had been fishing in the river. Crump's clothing was water-soaked, Crump stated as a result of his having fallen into the river. No fishing gear was found in the area nor had the police been successful in their search for a gun. Other details, not now necessary but pertinent at a trial, included a statement to the detective by an eyewitness who said he had seen Crump bending over the body of Mrs. Meyer. Of course, it is not for us to pass upon the conduct or the result of the inquest.

That same day the Government offered the appellant a preliminary examination but Legal Aid counsel asked a continuance until October 23. Thus it was that on the 23rd the Commissioner found no need to proceed with a preliminary examination since the grand jury had indicted Crump on October 19th. The Commissioner rested on the principle developed in Part I of this opinion that the indictment had dispensed with the need for a preliminary hearing. Legal Aid counsel thereafter withdrew from the case after informing the District Court that it was permitted to appear only for indigent accused, and that the accused had retained counsel of his own choice. The latter attorneys on October 28, 1964 entered their appearance, represented Crump at the arraignment on October 30, 1964, asked that a trial date be set, and thereafter instituted the instant *habeas* proceeding.

On November 9, 1964, the *habeas* judge offered appellant's counsel an opportunity to present whatever witnesses they might wish to call, whether to establish alibi or any other position which tended to support their claims. The only witness they called was Crump himself who testified solely with reference to alleged police brutality. In the nine days which had elapsed since arraignment, the appellant had not summoned any who might have been offered as material witnesses. Appellant's counsel asserted before the *habeas* judge that the irregularity upon which they relied was that counsel had been denied an opportunity at a preliminary hearing to pursue "discovery" of the Government's case.

Of course, there is no provision in the Federal Rules of Criminal Procedure for such discovery proceedings. Whether or to what extent pretrial discovery should be made available to those accused of crime has been discussed from time to time by legal writers. Committees of learned counsel have proposed various changes in the Federal Rules of Criminal Procedure which have had the attention of the Judicial Conference of the United States, and some of which proposals even now are receiving consideration by bench and bar throughout the country. No official committee has proposed and the Judicial Conference of the United States has never recommended the adoption of a rule to permit pretrial discovery of the nature and the scope of testimony intended to be offered by the Government to establish the commission of crime.[14]

In Part IV of the Federal Rules of Criminal Procedure entitled "Arraignment and Preparation for Trial," Rule 16 authorizes discovery of certain documents and tangible objects, but only at

---

14. Congress in the Jencks Act, 18 U.S.C. § 3500 (1965), has provided that statements or reports in the possession of the United States made by prospective Government witnesses shall be the subject of subpoena or discovery *only after* "said witness has testified on direct examination in the trial of the case."

a time "after the filing of the indictment or information." Rule 17 provides that the court or a judge thereof may order "at any time" that a subpoena be issued in behalf of an indigent defendant, but the latter

> "shall state the name and address of each witness and the testimony which he is expected by the defendant to give if subpoenaed, and shall show that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness and that the defendant does not have sufficient means and is actually unable to pay the fees of the witness."

No such motion was filed in this case by this appellant after indictment; no such compliance was tendered; no such evidence was proffered.

If the words "at any time" in Rule 17(b) could be construed to have applied to the coroner's inquest, or even to the October 23 continued proceeding before the Commissioner, no such motion had been submitted to any "court or judge." The witnesses whom appellant might have wished to call were not identified. There simply had been no compliance with Rule 17(b), even if it were contended that the Rule here had application.

Appellant's claim, bereft of even the slightest support on any of the foregoing bases, is now said to rest upon his interpretation of *dicta* in Washington v. Clemmer [15] and Blue v. United States.[16]

His reliance is misplaced. Part II of the Federal Rules of Criminal Procedure by definition applies to "Preliminary Proceedings." Rule 3 defines the complaint; Rule 4 applies to the warrant or summons. Rule 5 deals with proceedings before the Commissioner. Thus if an arrest has been made upon a warrant issued on a Rule 3 complaint, or if a person be arrested "without a warrant," the accused shall be presented before the Commissioner or other comparable magistrate for a determination of probable cause. The magistrate need not even be a federal officer. Quite apart from the fact that here probable cause had been established by the indictment which mooted the preliminary hearing, the appellant has failed to perceive that Washington v. Clemmer originated in a Rule 5(c) preliminary hearing. There, charged with rape, the accused had sought to subpoena the complaining witness in furtherance of his right to "introduce evidence in his own behalf." He had sworn, agreeably to the requirement of Rule 17(b), that "the prosecutrix, if called, would fail to make a positive identification, and thus that her proffered testimony would buttress his claim that no probable cause existed to detain him and weaken the Government's contrary contention." [17] The court explicitly stated: "We decide only that under the circumstances shown here the decision and reasons of the Commissioner, on the request for the subpoena, were clearly erroneous." [18]

In the instant case, as previously observed, not only was there no proffer of what evidence might have been expected from the witnesses, counsel had merely secured their names from a newspaper article, he said, and he had no knowledge as to what testimony might have been elicited through them.[19]

In Blue v. United States, another Rule 5(c) proceeding as this court noted, a

15. 119 U.S.App.D.C. 216, 339 F.2d 715, 119 U.S.App.D.C. 226, 339 F.2d 725 (1964).

16. 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), cert. denied, 380 U.S. 944, 85 S. Ct. 1029, 13 L.Ed.2d 964 (1965).

17. Washington v. Clemmer, 119 U.S.App. D.C. at 228, 339 F.2d at 727. The court added: "We thus do not reach the question whether it is always necessary for

an indigent seeking subpoenas under Rule 17(b) to allege that the witness will testify in his behalf."

18. *Id.* at 229, 339 F.2d at 728.

19. The District Court's files in United States v. Crump show that in response to Crump's motion for bill of particulars, the Government has filed a list of the names and addresses of more than 50 potential witnesses.

complaint had been filed with the Commissioner, appellant had been brought before him and the accused, without counsel, had waived a preliminary hearing. The court pointed out that the Legal Aid Act of 1960 contained a clear and explicit prescription for the District of Columbia for the provision of counsel. The court concluded that the Commissioner in accepting the waiver from the accused without counsel had not functioned properly as an instrument of the will of Congress in this particular case. Dictum in the *Blue* opinion otherwise intimates that Blue, held pursuant to pretrial Rule 5(c) proceedings, might have challenged the Commissioner's failure to accord the appellant a meaningful opportunity—with the aid of counsel—to elect to have a preliminary hearing.[20] He was a juvenile, presented before the Commissioner on the same day the Juvenile Court had waived its jurisdiction over him. But even after the indictment, no attack had been made upon the Commissioner's having accepted the defendant's uncounseled waiver of hearing. After reviewing the record, and perceiving no prejudice, the court held that affirmance of the conviction must follow a full-scale trial, otherwise free of error, and it was so ordered.

Not necessary for the discussion of the scope of Rule 5 proceedings in *Blue*, but not even mentioned by the appellant here, is the fact that Rule 9 proceedings depend upon a totally distinguishable predicate. An accused arrested on a bench warrant after indictment is accorded no right whatever to a preliminary hearing. The indictment itself supplies the essential probable cause, as we have seen. Justice Black in *Costello, supra,* has pointed to the intolerable situation which otherwise might follow. There simply is no basis for such "discovery" as appellant here would seek.

■ In like manner, and with like effect, an oath in support of an information filed pursuant to Rule 9 supplies the requisite probable cause,[21] and a summons must issue upon the request of Government counsel or by direction of the court. A preliminary examination before a United States Commissioner is not a condition precedent to prosecution by information.[22] Obviously, no "discovery" proceedings are thus available in such situations.

The dichotomy of treatment of "probable cause" in Rule 5 situations and in those arising under Rule 9 is historic, lawful and thoroughly established both by rule and precedent. There is neither occasion nor need for us to disturb the well-grounded course so thoroughly marked.

■ We hold that the superseding indictment established probable cause for the detention of Crump and denied him no right. The order of the District Court is

Affirmed.

WASHINGTON, Circuit Judge (dissenting):

Appellant was charged with murder and brought before the U. S. Commissioner on October 12, 1964. The preliminary hearing was continued until October 23 in order to provide appellant with coun-

---

20. The majority dictum in *Blue* intimated the desirability of providing a sanction to protect the right of an indigent to be afforded counsel by the United States Commissioner. Thus had Blue been afforded counsel, he might have deemed it desirable to cross examine *such* witnesses as the Government might produce to establish probable cause or that Blue introduce evidence in his own behalf. At the very least, had counsel been appointed by the Commissioner, Blue's election to waive a preliminary hearing would have rested upon an informed basis. Presum-

ably the majority in *Blue* had in mind that one who waived hearing without counsel ought to be placed in the status he would have possessed had his right to counsel not been denied. We have no occasion to express an opinion on any such rationale since Crump, unlike Blue, had not been deprived of his right to counsel.

21. Ocampo v. United States, 234 U.S. 91, 101, 34 S.Ct. 712, 58 L.Ed. 1231 (1914).

22. Roddy v. United States, 296 F.2d 9, 10 (10 Cir. 1961); United States v. Pickard, 207 F.2d 472, 474 (9 Cir. 1953).

sel and to await the outcome of the coroner's inquest. During the continuance, on October 19, the grand jury indicted appellant. On the same day, the coroner's inquest was held. Appellant's counsel sought a continuance at the inquest to obtain subpoenas for additional witnesses. He asserted that it was not a proper hearing and that appellant was entitled to a preliminary hearing. In order to preserve his position, he refused to participate in the proceeding. Cf. Carter v. Schweinhaut, No. 19,044, Order of February 2, 1965. The coroner's jury found that appellant was responsible for the victim's death.

Immediately after the coroner's inquest, the Government offered before the Commissioner to proceed with a preliminary hearing without further delay. Appellant's counsel sought a one-week continuance. The Commissioner denied both requests and stated that the hearing would be held as originally scheduled, on October 23. On October 21 and again on October 23, the Commissioner denied appellant's motions to subpoena six witnesses. The preliminary hearing was dismissed as moot by the Commissioner on October 23, because of the return of the indictment and because the inquest had been held.[1] Appellant sought a writ of habeas corpus in the District Court, following the procedure suggested in Blue v. United States, 119 U.S.App.D.C. 315, 321, 342 F.2d 894, 900 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed. 2d 964 (1965). The District Judge denied the writ and this appeal followed.

Although the majority opinion focuses on the precise facts of this case and the pretrial procedures made available to appellant, in my view the principal issue is whether the return of an indictment made a preliminary hearing unnecessary. The starting point for this inquiry is, of course, FED.R.CRIM.P. 5.[2] The rule itself states only one condition on which the preliminary hearing can be dispensed with when the defendant is arrested under a warrant issued upon a complaint or without a warrant: if the defendant waives the hearing. If there is no intelligent waiver, the rule is mandatory in its terms: "the commissioner *shall* hear the evidence within a reasonable time." (Italics added.)

The Government now argues that the preliminary hearing may be dispensed with if the defendant has been indicted prior to the date of the preliminary hearing. A similar argument was considered and rejected in Blue v. United States, *supra*. In *Blue* the appellant sought to have his convictions reversed because of the inadequacy of pretrial proceedings.

---

1. This was six days before our decision in Blue, infra, came down.

2. FED.R.CRIM.P. 5 provides in pertinent part:

    "(a) Appearance before the Commissioner.

    "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.

    *　　*　　*　　*　　*

    "(c) Preliminary Examination.

    "The defendant shall not be called upon to plead. If the defendant waives preliminary examination, the commissioner shall forthwith hold him to answer in the district court. If the defendant does not waive examination, the commissioner shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the commissioner that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the commissioner shall forthwith hold him to answer in the district court; otherwise the commissioner shall discharge him. The commissioner shall admit the defendant to bail as provided in these rules. After concluding the proceeding the commissioner shall transmit forthwith to the clerk of the district court all papers in the proceeding and any bail taken by him."

Appellant had waived a preliminary hearing without being informed of his right to have counsel appointed. The court found that this uncounseled waiver was not a sufficient pretrial proceeding. The court refused to reverse Blue's convictions only because he raised his objections on appeal and failed to show that he was prejudiced in his trial, and stated that the proper remedy was "by habeas corpus or mandamus prior to trial," whether before or after indictment. Supra at 321, 342 F.2d at 900. The court stated that the denial of an opportunity for a defendant to consider intelligently the value of a pretrial hearing cannot

> "be swept under the rug of a grand jury indictment. Neither do we think that the availability of a remedy should depend upon the outcome of a race between counsel seeking habeas corpus or mandamus and the grand jury acting upon the charge. We, therefore, conclude that relief in such a situation is not to be foreclosed solely by reason of an intervening indictment." Supra at 320, 321, 342 F.2d at 899–900.

The meaning of this language is as clear as words can be. The position of the Government herein would invite the kind of race to the courthouse that *Blue* said must be avoided. Furthermore, taking the Government's position, a defendant would run the risk of losing his right to a preliminary hearing if he sought a continuance in order to get assigned counsel. I do not think that the accused should be confronted with such a choice.

The *Blue* opinion states:

> "It has generally been thought that the purpose of a preliminary hearing is to afford the accused (1) an opportunity to establish that there is no probable cause for his continued detention and thereby to regain his liberty and, possibly, escape prosecution, and (2) a chance to learn in ad-

vance of trial the foundations of the charge and the evidence that will comprise the government's case against him." Supra at 322, 342 F.2d at 901. (Footnote omitted.)

While the return of an indictment might serve the first purpose, *Blue* made it clear that the second purpose is sufficiently important that a defendant is entitled to a preliminary hearing even after indictment. See also Washington v. Clemmer, 119 U.S.App.D.C. 216, 226, 339 F.2d 715, 725 (1964). The reasoning of *Blue* applies to either a "defective or omitted preliminary hearing." Supra at 321, 342 F.2d at 900. Since a preliminary proceeding without advice of counsel is a ground for relief when timely raised, *a fortiori*, the denial of a hearing altogether is a ground for relief. It would be absurd to say that a defendant must have a full hearing if he has a hearing, but that he need not have any hearing at all.[3] The court stated "that each stage along the way has its own intrinsic importance as well as a frequently significant relationship to the final result." Supra at 320, 342 F.2d 899.

This is not a case where appellant is held under an indictment. His present custody is under a warrant issued pursuant to the original complaint (FED.R. CRIM.P. 4), and the writ is sought here to test that custody. It does not appear to me from the record that a warrant was issued to hold him pursuant to the indictment. The brief of the Government acknowledges this fact in suggesting that our grant of the writ would be "a useless act," since appellant could then be arrested under a warrant issued pursuant to the indictment (FED.R.CRIM.P. 9); and he would then have no right to a preliminary hearing. But our reversal would not necessarily set the appellant free. The appropriate relief was indicated in Washington v. Clemmer, *supra*. Under similar circumstances, appellant brought habeas corpus to chal-

3. The court stated that a defendant must not be denied "the opportunity to consider utilizing" the pretrial hearing. It could hardly be argued in the light of this case that a defendant who decided to avail himself of the benefits of this proceeding could be denied access to a hearing.

lenge the procedure followed in his preliminary hearing. This court reversed the District Judge's denial of the writ and remanded with the instruction to issue a writ of habeas corpus returnable in two days, to become absolute at that time if a proper preliminary hearing had not been held prior to that date. We need not here consider whether a writ of habeas corpus so conditioned differs from a writ of mandamus ordering that a preliminary hearing be granted. In the present situation, such an order would be a grant of adequate relief. Such an order is not "a useless act." [4]

The majority distinguishes this case from *Blue* on the grounds that appellant was represented by an attorney during the pre-trial proceedings and that he had several opportunities—at the coroner's inquest on October 19, before the Commissioner on the same date when the Government offered to hold an immediate hearing, and at the habeas corpus hearing —to discover the bases of the case against him. However, I do not think these differences are sufficient to distinguish the two cases.

The majority opinion appears to adopt the Government's argument that other procedures, such as the coroner's inquest, were an adequate substitute for a preliminary hearing. This argument seems to have two branches. First, the argument runs, the inquest is the functional equivalent of a preliminary hearing. The accused is entitled to one or the other, but the choice of which he gets is not in his hands. I do not agree. Rule 5 states that a defendant must have a preliminary examination before a commissioner or other officer who has the power to commit persons charged with offenses. The coroner has no such statutory power;[5] so, at the literal level, the inquest cannot be a hearing sufficient to satisfy the terms of Rule 5. In several respects the inquest differs sharply from a preliminary hearing. An inquest is an informal, non adversary hearing before a doctor and a jury of six laymen. There is no requirement that the respondent (the potential defendant) be represented by counsel. In contrast, "[t]he preliminary hearing is an adversary judicial proceeding." (Footnote omitted.) Washington v. Clemmer, *supra* at 228, 339 F.2d at 727 (1964). And we have held that a defendant has a right to counsel at the proceeding. Blue v. United States, *supra*.[6] See White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). At an inquest, only the coroner has the power to summon wit-

4. The Supreme Court's holding in Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965), cited by the majority, is not inconsistent with this approach. In *Jaben* the Court held that the return of an indictment did not moot the question of whether probable cause existed prior to the return of the indictment for purposes of Section 6531 of the Internal Revenue Code. *Jaben* dealt with the interaction of the Rules of Criminal Procedure and the statute of limitations provision in the Internal Revenue Code. A similar construction of Rule 5 may be adopted where other policies or statutes so require. *Cf.* Blue v. United States, *supra*.

5. The jury's verdict states that they hold the respondent for the action of the grand jury. If the respondent is actually held under their authority, it is unclear where this authority comes from. The only thing resembling such authority is the coroner's power under Section 11–1904 to require a witness to give a recognizance to appear and testify in the District Court when the jury finds that murder or manslaughter has been committed. But this falls short of the power to commit.

6. The kinds of problems presented by having a presiding officer who is not trained in the law are illustrated in this case. In instructing the jury, the coroner stated that the jury could bring in (a) a verdict of accidental death, (b) a verdict of justifiable homicide if they found that appellant had killed the victim in self-defense, or (c) a finding that appellant caused the victim's death in a wilful manner. The instruction did not leave open for the jury the possibility that the victim was wilfully killed by someone other than appellant. A finding of responsibility under such an instruction can hardly be regarded as an adequate substitute for a finding of probable cause at a pretrial hearing.

nesses; his power extends only to the boundaries of the District; and he summons only enough witnesses to satisfy the jury.[7] The respondent in an inquest has no statutory right to put on his own evidence or to cross-examine the coroner's witnesses.[8] In contrast, in a Rule 5 hearing, the defendant has the right to subpoena witnesses under Rule 17. *Washington v. Clemmer, supra.* As a matter of right, he can cross-examine the witnesses against him and introduce evidence in his own behalf. Under these circumstances, it could hardly be argued that defendant is given an adequate substitute if the Government is free to give a defendant a coroner's inquest rather than a preliminary hearing, at the prosecutor's discretion.[9]

The other argument on the adequacy of the inquest suggests that the appellant in this case learned all that he could have learned in a preliminary hearing anyway; that in the inquest he got all that he was entitled to under *Blue* and *Washington v. Clemmer*; and that a preliminary hearing, in this case, is unnecessary. The Government cites our

unpublished order in Carter v. Schweinhaut, No. 19,044, dated February 2, 1965; but it states only that "an inquest *can be* an effective substitute for a hearing before the Commissioner." (Italics added.) But that order does not support the Government's position in this case. The court there reviewed the full transcript of the coroner's inquest, noted that defense counsel "actively participated in the hearing," and found that the hearing held had "substantially afforded petitioner the opportunities and information to which he was entitled under our decision in" *Blue*. The essence of the order was that a preliminary hearing would just be a repetition of the coroner's inquest. In *Carter*, the coroner took the testimony of five witnesses, including the two most damaging accusatory witnesses. Defense counsel cross-examined the witnesses at great length. Appellant did not name any witnesses whom he had wanted to call but had been unable to call at the inquest. In this case the situation is quite different. Only one witness testified at the inquest: a policeman who gave mostly hearsay testimony.

---

7. On page 6 of the transcript of the inquest, the coroner told defense counsel that he could subpoena witnesses. It is not clear under what authority defendant would have this power. Perhaps the coroner meant only that counsel could ask him to subpoena witnesses for the defense. On the same page, moreover, the coroner stated that he would listen to the one witness from the police department and then ask the jury "if they feel further witnesses are necessary. On their reactions to this it will be my decision whether we continue this, subpoena more witnesses or terminate the testimony then." Defense counsel did request that other witnesses be subpoenaed, and his request was in effect denied.

8. It seems that the coroner provides the respondent with counsel and gives him the right to cross-examine, as a matter of practice. But this is quite different from a statutory right.

9. The decisions of this court do not compel a contrary result. In Neely v. United States, 79 U.S.App.D.C. 177, 144 F.2d 519, cert. denied, 323 U.S. 754, 65 S.Ct. 83, 89 L.Ed. 604 (1944), we said that the coroner "sits in a quasi-judicial capacity."

*Supra* at 178, 144 F.2d at 520. The issue in that case was whether appellant's exculpatory statement made at an inquest could be used for impeachment. The focus of the court's inquiry was whether the inquest was characterized by "the evils of prolonged questioning" which *McNabb* was designed to prevent. In this context the opinion remarked that the proceeding was "quasi-judicial" and the appellant had ample safeguards; hence, *McNabb* did not compel exclusion of the evidence. The court did not consider whether an inquest could be a substitute for a preliminary hearing.

In Allen v. United States, 91 U.S.App. D.C. 197, 201, 202 F.2d 329, 333, cert. denied, 344 U.S. 869, 73 S.Ct. 112, 97 L.Ed. 674 (1952), the court stated in dictum that a coroner's inquest "was equivalent to a hearing before a committing magistrate." (Footnote omitted.) The issue in the case was whether a confession made *prior* to the inquest was admissible. The court cited only the *Neely* case and the statute to support its assertion. Neither is authority for the position taken. For the reasons stated above, I do not consider an inquest equivalent to a preliminary hearing.

He was not subjected to cross-examination. The Government's eyewitness did not appear,[10] nor did the other witnesses with direct knowledge of the crime. Defense counsel; sought to subpoena more witnesses, then, asserting his right to have a preliminary hearing, refused to participate. Clearly, this inquest was not a sufficient substitute for a preliminary hearing.

Defense counsel acted quite properly in refusing to participate. The inquest and the preliminary hearing are not equivalents. Defense counsel need not acquiesce in the Government's decision to proceed by inquest rather than preliminary hearing. Defense counsel in *Carter* chose to participate in the inquest. Appellant's counsel was within his rights under Rule 5 in insisting on a preliminary hearing.

The Government argues that the testimony at the inquest sufficiently "outlined the foundations of the charge against appellant," including the identity of the "key government witness." This argument, by analogy to *Carter* states that appellant could learn no more in a preliminary hearing than he did in the inquest. In the light of Washington v. Clemmer, *supra,* this argument cannot be maintained. Appellant therein, like this appellant, was an indigent. In appealing from a denial of habeas corpus, he argued *inter alia* that his preliminary hearing was insufficient because the Commissioner had refused to subpoena the complaining witness. Rule 17(b). In the per curiam opinion reversing, filed on May 11, 1964, the court stated:

> "As we said in Greenwell v. United States, 115 U.S.App.D.C. 44, 46, 317 F.2d 108, 110 (1963), 'if the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous.'
>
> "Likely to be called on this basis, in addition to alibi witnesses, are the complainant and other material witnesses named in the complaint who for some reason have not been called by the Government." *Supra* at 219, 339 F.2d at 718.

In its opinion of June 12, 1964, the court placed much reliance on the fact that "[t]he accused here averred that the prosecutrix, if called, would fail to make a positive identification \* \* \*." *Supra* at 226, 339 F.2d at 725. The court did not reach the question of whether such averment is necessary under Rule 17(b). This case is extremely close to the *Washington* case. Appellant here has made the same allegation in precisely the same words: that the eyewitness "cannot make positive identification of me in connection with the alleged offense." Appellant's Affidavit of October 21, 1964; Washington's Affidavit of May 11, 1964. We held that it was reversible error for the Commissioner to refuse to issue a subpoena under Rule 17(b) in *Washington*; it is equally clear that appellant would be entitled to subpoena the eyewitness at a preliminary hearing.[11] Thus, the preliminary hearing would give him a greater opportunity to confront his accusers and learn the strengths and weaknesses of the Government's case than he had in the inquest.[12]

10. The policeman testified that the eyewitness saw appellant standing over the body from a distance of nearly ¾ of a mile.

11. Appellant also sought to subpoena several other witnesses; we need not decide whether he is entitled under Rule 17(b) to compel their attendance. It is sufficient to hold that appellant is entitled to an opportunity to confront the eyewitness. He has not yet been given such an opportunity.

The Commissioner's denial of appellant's motion for a subpoena, entered on October 21, 1964, seems to be irreconcilable with our decision in *Washington.*

12. The appellant did not waive his right to a preliminary hearing by refusing the Government's offer of an immediate hearing on October 19. The hearing had been continued on October 12 until October 23. The Government cannot speed up the process and compel the defendant to go

The writ of habeas corpus should issue because appellant is being held in custody without a preliminary hearing, in violation of Rule 5. There is no need for appellant to establish more than this in the hearing on the writ: He need not use this occasion as an opportunity to rebut the Government's showing of probable cause. As indicated above, I think that the proper remedy is to instruct the District Court to issue the writ, to be made absolute unless a preliminary hearing is held prior to the date of return. See Washington v. Clemmer, *supra.*

to a hearing unprepared. Nor was the bill of particulars provided to defendant

by the Government a substitute for a preliminary hearing.