**Lawrence D. COLEMAN et al., Appellants,**

v.

**The Honorable Arthur L. BURNETT, United States Magistrate for the District of Columbia, et al.**

**No. 71–1114.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 11, 1971.

Decided March 14, 1973.

Jon P. Axelrod, Washington, D. C., with whom Norman Lefstein, Washington, D. C., was on the brief, for appellants.

C. Madison Brewer, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty. John A. Terry, Gregory C. Brady, Joseph M. Hannon, Asst. U. S. Attys., at the time the brief was filed, C. Francis Murphy, Corp. Counsel for the District of Columbia, Richard W. Barton and Leo. N. Gorman, Asst. Corp. Counsels, were on the brief, for appellees. Charles F. Flynn and William H. Schweitzer, Asst. U. S. Attys., also entered appearances for appellee Burnett.

Before FAHY, Senior Circuit Judge, and McGOWAN and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This appeal tenders for resolution questions as to the examinatorial entitlements of the criminally accused at federal preliminary hearings. Appellants, Lawrence D. Coleman, Jorge D. Dancis and Ronald Shepard, were arrested and charged [1] with the commission of unrelated crimes within the District of Columbia. Following arrest, each was brought before a judicial officer [2] for the proceedings prescribed by then Rule 5 of the Federal Rules of Criminal Procedure.[3] Coleman and Dancis each sought, and each was denied, a subpoena requiring the attendance at his preliminary hearing of the only apparent eyewitness to his alleged offenses. Shepard, during his preliminary hearing, was restricted in cross-examination of the complainant and a corroborating Government witness, and in the presentation of evidence of his own.

Subsequent to the preliminary hearings, the three appellants joined in a class-action complaint in the District Court. They sought declaratory judgments that the preliminary hearings were defective, writs of mandamus reopening them, and an injunction restraining, pendente lite, presentation of their cases for grand jury consideration.[4] The District Court denied a preliminary injunction and dismissed

---

1. Coleman was charged with violating 21 U.S.C. § 174 (1964) and 26 U.S.C. §§ 4704(a), 4705(a) (1964), Dancis with violating 26 U.S.C. 4742(a) (1964) and unlawful possession of narcotic drugs impinging on D.C.Code §§ 33–402 (1967), Shepard with assaulting a deputy United States Marshal in transgression of 18 U.S.C. § 111 (1964).

2. Coleman and Dancis were presented to a United States Magistrate. See former Fed.R.Crim.P. 5; 28 U.S.C. § 636(a)(1) (Supp. IV 1968). Shepard was brought before a judge of the District of Columbia Court of General Sessions (now Superior Court) sitting as a committing magistrate pursuant to 18 U.S.C. § 3041 (1964) and D.C.Code § 11–963(c) (1967).

3. Former Fed.R.Crim.P. 5(c), which is critically involved in this case, is quoted in note 54, infra. Former Rule 5 was recently amended. Fed.R.Crim.P. 5, 5.1 (effective Oct. 1, 1972). Now, Rule 5 deals with the accused's initial appearance before the magistrate and Rule 5.1 with his preliminary hearing.

The Federal Magistrates Act, Pub.L. No. 90–578, tit. III, § 303(a), 82 Stat. 1107, 1117 (1968), 18 U.S.C. § 3060 (1970), which implemented former Rule 5(c) and now Rule 5.1, is discussed in Parts II(A), III(B), infra.

4. Appellants, invoking Fed.R.Civ.P. 23, brought the action as purported representatives of a class composed of themselves and all others similarly situated. The District Court made no determination as to whether the litigation could be maintained as a class action. See Fed.R.Civ. P. 23(c)(1). Appellants have registered no objection or claim of error on that account. We deem the omission harmless at the present since we affirm as to Coleman and Shepard and since the determination will be open to the District Court upon our remand as to Dancis. Fed.R. Civ.P. 61.

the action,[5] and this appeal ensued. For reasons which follow, we reverse the District Court's judgment to the extent that it denied a declaration that Dancis' preliminary hearing was faulty and remand the case in order that the declaration may be made. In all other respects we affirm, but without prejudice to rectification in the criminal proceeding pending against Dancis of the error committed at his preliminary hearing.

Some of the questions advanced on appeal are common to the cases of two or more of the three appellants.[6] Each appeal, however, also tenders an issue not present in either of the others. We therefore treat the three cases separately.

## I. COLEMAN'S APPEAL

After joining in this appeal, Coleman was indicted in two bills for multiple violations of the federal narcotic laws.[7] Two days before oral argument on the appeal, he entered a plea of guilty to two counts, one in each of the two indictments.[8] He insists that his preliminary hearing, at which the charges laid in one of the indictments were aired, was fatally infirm and that we should now direct that it be reopened.[9] He further argues, as he must, that the plea does not stand in the way of the appeal brought here for that purpose. We do not agree.

A plea of guilty consummating a voluntary and intelligent choice of available alternatives [10] has serious ramifications for the criminal proceeding. It operates as an admission of all material facts alleged in the count or counts pleaded to,[11] and thus dispenses with the need to prove them.[12] More important, however, is the effect of the plea beyond this service for the Government. "[T]he plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge." [13] It is thus an act bringing

---

5. The District Court issued a temporary restraining order enjoining the United States Attorney from presenting appellants' cases to a grand jury until an application for a preliminary injunction could be heard. After the request for preliminary injunction was denied, this court continued the restraint temporarily, but dissolved it following appellees' concession that the return of indictments would not preclude a reopening of the challenged preliminary hearings if found to be defective. See Part III(B), *infra*.

6. These include the discovery function of the preliminary hearing and the effect of an indictment upon prior defective hearings, discussed in Parts II(A), III(B), *infra*, and the accused's right to present witnesses at the hearing, discussed in Part III(A), *infra*.

7. There were two multicount indictments, each predicating charges on 21 U.S.C. § 174 (1964) and 26 U.S.C. §§ 4704(a), 4705(a) (1964). These sections have all since been repealed. Pub.L. No. 91–513, tit. III, §§ 1101(a)(2), 1101(b)(3)(A), 84 Stat. 1291, 1292 (1970), but the prosecutions were unaffected by the repeal. 84 Stat. 1294 (1970).

8. These two counts were laid on 26 U.S.C. § 4704(a) (1964). See text *infra* at note 30.

9. The strategy admittedly is to gain a decision favorable to reopening of the preliminary hearing with a view to a possible later motion in the District Court for leave to withdraw the plea.

10. *Cf.* United States v. Miller, 293 F.2d 697, 698 (2d Cir. 1961); United States v. Swaggerty, 218 F.2d 875, 879 (7th Cir.), cert. denied, 349 U.S. 959, 75 S.Ct. 889, 99 L.Ed. 1282 (1955).

11. United States v. Smith, 407 F.2d 33, 35 (2d Cir. 1969); United States v. Fragus, 422 F.2d 1244, 1245 (5th Cir. 1970); Newalk v. United States, 254 F.2d 869, 870 (5th Cir. 1958); Berg v. United States, 176 F.2d 122, 125 (9th Cir.), cert. denied, 338 U.S. 876, 70 S.Ct. 137, 94 L.Ed. 537 (1949); Kahl v. United States, 204 F.2d 864, 866 (10th Cir. 1953).

12. *E. g.*, United States v. Bishop, 431 F.2d 481, 482 (5th Cir. 1970); Williams v. United States, 290 F.2d 217, 218 (5th Cir. 1961); Bartholomew v. United States, 286 F.2d 779, 781 (8th Cir. 1961).

13. Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

the prosecution to a successful end by solemnly establishing the offense so acknowledged:

> A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence.[14]

We speak, of course, only of a valid plea of guilty, which by definition is one which is understandably as well as voluntarily made.[15] The plea cannot take on that character unless, among other things, the accused is aware of the consequences,[16] of which its conclusivity on the proceeding is not the least. But if, on the other hand, the accused possesses that awareness and nonetheless enters the plea, it is truly an "intentional relinquishment or abandonment"[17] of defenses and procedural entitlements of which the defendant otherwise might have availed himself.[18]

So it is that "[a]n unqualified plea of guilty, legitimately obtained and still in force, bars further consideration of all but the most fundamental premises for the conviction."[19] Emerging from the numerous decisions on the subject is the well settled rule that an unconditional plea of guilty waives all prior infirmities in the prosecution which affect neither the court's jurisdiction nor the substantive sufficiency of the indictment.[20] The decisions make equally plain the corollary that as long as the plea stands, it bans consideration of other types of defects on appeal.[21]

14. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). See also Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

15. See, e. g., Fed.R.Crim.P. 11; McCarthy v. United States, 394 U.S. 459, 465–470, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Kercheval v. United States, *supra* note 14, 274 U.S. at 223, 47 S.Ct. 582, 71 L.Ed. 1009.

16. Acceptance of a plea of guilty or nolo contendere is forbidden unless the judge determines "that the plea is made . . . with understanding of . . . the consequences of the plea." Fed.R.Crim.P. 11. See also the cases cited *supra* note 15 and *infra* note 18.

17. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1968).

18. See Edwards v. United States, 103 U.S. App.D.C. 152, 155, 256 F.2d 707, 710, cert. denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82 (1958); United States v. Warden, 381 F.2d 209, 213 (2d Cir. 1967).

19. United States v. Doyle, 348 F.2d 715, 718–719 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965).

20. *Id.* at 718; United States v. Washington, 237 F.2d 632, 633 (3d Cir. 1956); Bloombaum v. United States, 211 F.2d 944, 945 (4th Cir. 1954); Fowler v. United States, 391 F.2d 276, 277 (5th Cir. 1968); United States v. Parker, 292 F.2d 2, 3 (6th Cir. 1961); United States v. Hetherington, 279 F.2d 792, 796 (7th Cir.), cert. denied, 364 U.S. 908, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960); Hopkins v. United States, 344 F.2d 229, 234 (8th Cir. 1965); Berg v. United States, *supra* note 11, 176 F.2d at 125; Salazar v. Rodriguez, 371 F.2d 726, 729 (10th Cir. 1967). Guilty pleas are survived, however, by claims that the indictment fails to charge an offense, e. g., Kolaski v. United States, 362 F.2d 847, 848 (5th Cir. 1966); Marteney v. United States, 216 F.2d 760, 762 (10th Cir. 1954), or that the statute under which a defendant is charged is unconstitutional, e. g., Haynes v. United States, 390 U.S. 85, 87, 88 S.Ct. 722, 19 L.Ed.2d 923 n. 2 (1968); Ex parte Siebold, 100 U.S. 371, 374, 25 L.Ed. 717 (1879).

21. Compare United States v. Doyle, *supra* note 19, 348 F.2d at 718–719; Fowler v. United States, *supra* note 20, 391 F.2d at 278; Taylor v. United States, 385 F.2d 835, 836 (8th Cir. 1967), cert. denied, 393 U.S. 879, 89 S.Ct. 181, 21 L.Ed.2d 153 (1968); with Haynes v. United States, *supra* note 20, 390 U.S. at 100, 88 S.Ct. 722, 19 L.Ed.2d 923; Kolaski v. United States, *supra* note 20, 362 F.2d at 848; Jaben v. United States, 333 F.2d 535, 538 (8th Cir. 1964), aff'd, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).

"In a sense . . . all plea bargaining involves a compromise of the right to appeal. A guilty plea works as a waiver of all 'non-jurisdictional' violations of the defendant's rights, and it may therefore

We are unable to distinguish, in terms of the bar, a direct appeal in the criminal proceeding from an appeal in collateral litigation designed, as here, to secure benefits at a criminal trial.

 As we have said, the key to waiver, and to conclusivity of the plea on further litigation, combines the accused's understanding that that would become a consequence of pleading guilty and his willingness to so plead on those term.[22] The plea is invalid, of course, if the accused did not realize that it would sacrifice his right to judicial determination of the factual and legal issues by a trial with ultimate appellate review.[23] And surely an accused is not barred from pursuing his appeal by pleading guilty where a statute authorizes him to do both.[24] But there is an inherent conflict in the notion that, absent such a statute—the case in the federal system—an accused can intelligently waive adverse pre-plea rulings with a view to reposing the litigation and still keep the issues alive on appeal.

We are mindful of the suggestion that the ends of sound judicial administration might be better served by permitting the accused to preserve adverse rulings on legal questions for appeal without the burden of a potentially futile trial on the merits.[25] That position was asserted in United States v. Doyle,[26] but the court answered:

> The premise is sound enough but the conclusion does not follow. There are a number of ways to deal sensibly with such a case without departing from the [conclusivity rule]. A plea expressly reserving the point accepted by the court with the Government's consent or a stipulation that the facts are as charged in the indictment are two; failing either of these, the defendant can simply stand on his not guilty plea and put the Government to its proof without developing a case of his own.[27]

We agree, and believe too that without a choice between the competing values by an exercise of statutory or rule-making powers,[28] the availability of appeal must depend on the breadth of the accused's waiver.[29]

 That Coleman's waiver was broad enough to encompass his present appeal is a matter not fairly open to doubt on the record. Unlike the two counts to which he pleaded guilty, other counts of the indictments against him charged crimes for which there were mandatory penalties,[30] which anyone would naturally wish to avoid. The Government was willing to accept Coleman's plea on the two counts carrying lighter penalties, but only if the plea were tendered right away. The Govern-

---

prevent those violations from becoming the basis for an appeal." Alschuler, The Prosecutor's Role In Plea Bargaining, 36 U.Chi.L.Rev. 50, 83 n. 78 (1968).

This is not to say that the plea renders the case moot. By leave of court, it may be withdrawn before or after sentence, Fed.R.Crim.P. 32(d), and if withdrawn the prosecution resumes. It also resumes, of course, following any determination that the plea was invalidly entered. The doctrine that a valid outstanding plea of guilty ordinarily forecloses further litigation does not rest upon any notion that the controversy is dead. Its consequence, more accurately, is that the issues are in a state of repose as long as the plea remains in effect.

22. See text *supra* at notes 16–18.

23. Compare United States v. Warden, *supra* note 18, 381 F.2d at 214–215 with Briscoe v. United States, 129 U.S.App. D.C. 146, 148, 391 F.2d 984, 986 (1968); Redwine v. Zuckert, 115 U.S.App.D.C. 130, 132, 317 F.2d 336, 338 (1963).

24. See United States v. Warden, *supra* note 18, 381 F.2d at 214–215.

25. See 1 C. Wright, Federal Practice and Procedure § 175, at 381 (1969).

26. *Supra* note 19.

27. 348 F.2d at 719 (footnote omitted).

28. See Judicial Conference of the United States, Committee on Rules of Practice and Procedure, Proposed Amendments to the Rules of Criminal Procedure of the United States District Courts, Rule 11(c) (3), (4) (Prelim. Draft 1971) 52 F.R.D. 409, 415–416 (1971).

29. See text *supra* at notes 22–23.

30. 21 U.S.C. § 174 (1964); 26 U.S.C. § 4705(a) (1964). See also note 8, *supra*.

ment made it plain that it would not hold its offer of acceptance open just to enable Coleman to litigate this appeal. This was fully appreciated by defense counsel, who protested the Government's position to the District Judge, and by Coleman himself, who acknowledged to the judge his understanding that the plea would foreclose both trial and appeal.[31] We conclude that Coleman's outstanding plea of guilty has precisely that effect.

 The plea, we are also persuaded, was unaffected by Coleman's simultaneous protestation of innocence.[32] While pleas of guilty are usually accompanied by express admissions of guilt,[33] lack of that element in no wise conditions the plea.[34] In North Carolina v. Alford,[35] the Supreme Court held flatly that "[a]n individual accused of crime may voluntarily, knowingly and understandably consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."[36] Long prior to the decision in Alford, penalties imposed on defendants who maintained even vigorously that they did not commit the charged offenses, but who nonetheless entered pleas of nolo contendere, were upheld against consti-

tutional attacks upon them.[37] In Alford, the Court perceived no difference between a guilty plea refusing to avow the commission of the offense and one simultaneously maintaining the accused's innocence.[38] As long as each is voluntarily and intelligently entered, there is no cause for constitutional complaint.[39]

 Similarly, the Government's refusal to extend its acceptance of the plea for the period Coleman continued in this litigation did not vitiate the plea.[40] The Government's declination stemmed from its concern that its case against Coleman might deteriorate in the meantime, and it is not for us to substitute our judgment for its. Nor is this a "situation [in which] the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty." [41] On the contrary, the record supports amply the conclusion that Coleman made his plea voluntarily, and knowingly at the expense of the appeal. We hold that his attack on his preliminary hearing is now barred.

## II. SHEPARD'S APPEAL

Appellant Shepard was charged with assaulting a Deputy United States Marshal[42] while a prisoner in the

---

31. Before accepting Coleman's plea of guilty, the District Judge "address[ed] the defendant personally" in order to "determin[e] that the plea [was] made voluntarily with understanding of the nature of the charge and the consequences of the plea," Fed.R.Crim.P. 11; see also McCarthy v. United States, supra note 15, 394 U.S. at 464–467, 89 S.Ct. 1166, 22 L.Ed.2d 418, and the following transpired:
 THE COURT: If this plea of guilty is accepted, there will be no trial, there will be no appeal; you understand that?
 * * * * *
 DEFENDANT COLEMAN: Yes.

32. North Carolina v. Alford, 400 U.S. 25, 37–38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

33. Id. at 37, 91 S.Ct. 160.

34. Hudson v. United States, 272 U.S. 451, 453, 47 S.Ct. 127, 71 L.Ed. 347 (1926).

35. Supra note 32.

36. 400 U.S. at 37, 91 S.Ct. at 167.

37. Id. See also United Brotherhood of Carpenters & Joiners v. United States, 330 U.S. 395, 412, 67 S.Ct. 775, 91 L.Ed. 973 (1947); United States v. Norris, 281 U.S. 619, 622, 50 S.Ct. 424, 74 L.Ed. 1076 (1930). And see Hudson v. United States, supra note 34.

38. North Carolina v. Alford, supra note 32, 400 U.S. at 37, 91 S.Ct. 160.

39. See Brady v. United States, supra note 13, 397 U.S. at 755, 90 S.Ct. 1463, 25 L.Ed.2d 747; McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 796, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

40. United States v. Doyle, supra note 19, 348 F.2d at 719.

41. Brady v. United States, supra note 13, 397 U.S. at 751, 90 S.Ct. at 1470 n. 8.

42. 18 U.S.C. § 111 (1964).

cellblock[43] of the District of Columbia Court of General Sessions.[44] A judge of that court, sitting as a committing magistrate,[45] presided over his preliminary hearing. The complaining witness, Deputy Marshal John H. Lonien, testified that while he was on duty in the cellblock, Shepard committed an unprovoked attack upon him, striking him above the right eye with a fist. Another Government witness, Herbert Rutherford, employed as a guard in the cellblock, corroborated Marshal Lonien's testimony.

Shepard's counsel was permitted considerable latitude in cross-examination of these witnesses as to matters they had testified to on direct examination. The judge, however, sustained the Government's objections to a number of inquiries directed to them on other topics. The specific complaint Shepard refers to us runs to the judge's rulings on eleven questions propounded to Marshal Lonien and four to Guard Rutherford.[46] Those questions, in the main, solicited testimony as to disparaging remarks assertedly directed to cellblock personnel by prisoners other than Shepard, and to the nature and extent of any injuries inflicted by Shepard on Marshal Lonien and of injuries allegedly sustained by Shepard himself.[47] The judge also ruled out Shepard's proffer of photographs purporting to show his post-altercation physical condition, and inquiry of a defense witness as to whether cellblock personnel had tried to confiscate the photographs.

The more common basis of the Government's objections to defense counsel's cross-examinatorial approach was that he was venturing beyond the boundaries of a hearing designed to explore probable cause and embarking on a quest for discovery of elements of the Government's case.[48] After some amount of prior ambivalence on the subject, Shep-

43. Shepard had been held in default of a $300 bond on a petit larceny charge, D.C.Code § 22–2202 (1967). The Government subsequently entered a nolle prosequi in that case.

44. Now the Superior Court of the District of Columbia.

45. See note 2, *supra.*

46. See note 47, *infra.*

47. The following questions were directed to Marshal Lonien on cross-examination and excluded:

Q. Did you lose any time from work because of this incident?

* * * * *

Q. Did you hear any of the other marshals making racial slurs and telling the prisoners to move faster?

* * * * *

Q. Isn't it true, Marshal Lonien, some other prisoners, beside Mr. Shepard, made disparaging remarks to you?

* * * * *

Q. Did you ever describe what happened on this day to Mr. Luke Moore as an escape attempt?

* * * * *

Q. Can you describe how you attempted to lead him?

* * * * *

Q. Did you see Mr. Shepard on the floor with other marshals?

* * * * *

Q. Did you know, Marshal Lonien, how Mr. Shepard was rendered unconscious?

* * * * *

Q. Did you see anybody kick Mr. Shepard in the eye?

* * * * *

Q. Did you ask anybody for help?

* * * * *

Q. Did you ever describe what took place in the cellblock as a riot?

* * * * *

Q. Did you receive medical treatment for your injuries?

* * * * *

Questions addressed to Guard Rutherford but excluded were:

Q. Do you know who took Mr. Shepard's handcuffs off?

* * * * *

Q. Mr. Rutherford, have you had any trouble with prisoners as they are being led in?

* * * * *

Q. Did you have a part in restraining Mr. Shepard on that date?

* * * * *

Q. Did you see Marshal Lonien attempt to place Mr. Shepard in solitary confinement?

48. There were other objections to specific questions, principally on the ground that they were outside the scope of the witness' direct examination.

ard now disclaims any attempt at discovery, as distinguished from refutation of probable cause.[49] He further argues that the questions addressed to Marshal Lonien and Guard Rutherford bore a substantial relationship to the existence or nonexistence of probable cause.

 At the outset, we put aside an otherwise litigable circumstance which has come to our attention. Exercising our power to judicially notice proceedings in related cases,[50] we learned that, after oral argument and submission in this court, Shepard entered a plea of guilty to a lesser offense included within the charge on which he was indicted. Unlike their stance with respect to Coleman, appellees have not contended that Shepard's plea affects his appeal, nor indeed did either side see fit to even make us aware of the plea. We have pointed out that a plea of guilty operates as a barrier only when it possesses the ele-

ments of a valid waiver of further litigation.[51] In Coleman's instance, the record satisfies us that his plea did,[52] but in Shepard's we have no record on the matter at all.[53] Accordingly, we do not consider this potential problem.

### A. *Discovery at Preliminary Hearings*

Former Rule 5(c) granted the accused, and its present counterpart continues to confer, the right to "cross-examine witnesses against him" at a preliminary hearing.[54] The true dimension of that right is bound to depend in considerable measure upon the degree to which discovery by the defense may be a purpose the preliminary hearing is designed to serve. That, in turn, is a topic upon which the judges of this court have expressed views which, to say the least, have not been entirely harmonious.[55] One view has been that the sole objective of a preliminary hear-

49. That position became clear to us for the first time from a memorandum filed after the case had been submitted to us.

50. See Craemer v. Washington, 168 U.S. 124, 129, 18 S.Ct. 1, 42 L.Ed. 407 (1898); Butler v. Eaton, 141 U.S. 240, 243–244, 11 S.Ct. 985, 35 L.Ed. 713 (1891); Zahn v. Transamerica Corp., 162 F.2d 36, 48 n. 20 (3d Cir. 1947).

51. See text *supra* at notes 22–24.

52. See text *supra* at notes 30–41.

53. No transcript of the proceeding eventuating in the change of plea appears in the record of Shepard's criminal case.

54. Former Fed.R.Crim.P. 5 (c) provided:
The defendant shall not be called upon to plead. If the defendant waives preliminary examination, the commissioner shall forthwith hold him to answer in the district court. If the defendant does not waive examination, the commissioner shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the commissioner that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the commissioner shall forthwith hold him to answer in the district court; otherwise the commissioner shall discharge him. The commissioner shall admit the defendant to bail as pro-

vided in these rules. After concluding the proceeding the commissioner shall transmit forthwith to the clerk of the district court all papers in the proceeding and any bail taken by him.
United States Magistrates now exercise the functions formerly committed to commissioners: Federal Magistrates Act, Pub.L. No. 90–578, tit. III, § 303(a), 82 Stat. 1107, 1117 (1968), 18 U.S.C. § 3060 (1970).
Present Fed.R.Crim.P. 5.1(a) provides:
If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the federal magistrate shall forthwith hold him to answer in district court. The finding of probable cause may be based upon hearsay evidence in whole or in part. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. Objections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary examination. Motions to suppress must be made to the trial court as provided in Rule 12.

55. See the several views expressed in Ross v. Sirica, 127 U.S.App.D.C. 10, 14, 380 F.2d 557, 561 (1967). See also Blue v. United States, 119 U.S.App.D.C. 315, 322, 342 F.2d 894, 901 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d

ing is to determine whether there is probable cause to believe that the accused has committed an offense, and that the accused may lay claim to the benefit of only so much discovery as may become incidental to a properly conducted inquiry into probable cause.[56] That view has now been incorporated into federal jurisprudence by the Federal Magistrates Act.[57]

This Act provides mandatorily, with exceptions later to be considered,[58] for "a preliminary [hearing] . . . to determine whether there is probable cause to believe that an offense has been committed and that the arrested person has committed it."[59] The reason the Act indulges the preliminary hearing no independent discovery role is evident from its legislative history. During hearings before the Senate Committee on the Judiciary, witnesses urged "that preliminary examination afforded a necessary and useful medium for defense counsel to obtain discovery of the prosecution's evidence."[60] The Committee, however, was "of the opinion that the problem of discovery should be treated separately from that of the preliminary

hearing."[61] Although the need for expanded pretrial discovery procedures was recognized,[62] the Committee felt that

> The preliminary hearing does not present an ideal opportunity for discovery. It is designed for another purpose; namely, that of determining whether there is probable cause to justify further proceedings against an arrested person. Thus, the degree of discovery obtained in a preliminary hearing will vary depending upon how much evidence the presiding judicial officer thinks is necessary to establish probable cause in a particular case. This may be quite a bit, or it may be very little, but in either event it need not be all the evidence within the possession of the Government that should be subject to discovery.[63]

The Committee accordingly concluded[64] "that discovery procedure should remain separate and distinct from the preliminary examination. . . ."[65]

▉ That settles the matter, of course, for Shepard and others whose hearings took place after the effective date of the Act.[66] The mission of the

---

964 (1965); Dancy v. United States, 124 U.S.App.D.C. 58, 60, 361 F.2d 75, 77 (1965); Holmes v. United States, 125 U.S.App.D.C. 187, 188, 370 F.2d 209, 210 (1966).

56. Ross v. Sirica, *supra* note 55, 127 U.S.App.D.C. at 16, 380 F.2d at 563 (statement of Judges McGowan and Leventhal).

57. Federal Magistrates Act, Pub.L. No. 90–578, tit. III, § 303(a), 82 Stat. 1107, 1117 (1968), 18 U.S.C. § 3060 (1970).

58. See note 140, *infra*, and accompanying text.

59. Federal Magistrates Act, Pub.L. No. 90–578, tit. III, § 303(a), 82 Stat. 1107, 1117 (1968), 18 U.S.C. § 3060 (1970).

60. S.Rep. No. 371, 90th Cong., 1st Sess. 34 (1967).

61. *Id.*

62. *Id.*

63. *Id.*

64. The Committee also specified another reason:

> In addition, because its fundamental purpose is to prevent unjustified re-

straints of liberty, the preliminary examination should be held within a short time after an accused is first arrested. Discovery, on the other hand, can most usefully take place at a later stage, much closer to trial, when the evidence is more nearly complete and defense counsel is better prepared.

*Id.* at 34–35.

65. *Id.* at 35.

66. Appellees do not suggest that the Federal Magistrates Act repealed Rule 5(c). As was said in United States v. Hinkle, 307 F.Supp. 117, 120 (D.D.C.1969):

> [I]t appears . . . that Sec. 3060 as amended does not repeal Rule 5(c), as there is no conflict posed when the two are read in *pari materia*. Rather, Sec. 3060 serves as a clarification of the standard to be applied in determining whether in a particular case a preliminary hearing is called for, and if so, the purpose of the preliminary hearing. On the other hand, Rule 5(c) complements Sec. 3060 by providing the evidentiary and procedural rules to be applied when a hearing is held.

hearing is an investigation into probable cause for further proceedings against the accused. It does not include discovery for the sake of discovery. To be sure, the evidence the Government offers to establish probable cause is by nature also discovery for the accused. So also is information adduced on cross-examination of Government witnesses on the aspects of direct-examination testimony tending to build up probable cause. In those senses, some discovery becomes a by-product of the process of demonstrating probable cause. But in no sense is discovery a legitimate end unto itself.

### B. *Cross-Examination at Preliminary Hearings*

■ To say merely that discovery is not a primary function of federal preliminary hearings is to respond only incompletely to the issue Shepard poses. As we have said, former Rule 5(c) conferred upon the accused the right to "cross-examine witnesses against him," [67] and that right he continues to enjoy.[68] Moreover, in Coleman v. Alabama,[69] the Supreme Court, in holding that a preliminary hearing to ascertain probable cause to bind an accused for additional proceedings is a critical stage of the criminal process at which the Sixth Amendment right to counsel obtains,[70] pointed out as one of the considerations supporting its holding that "the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the [prosecution's] case that may lead the magistrate to refuse to bind the accused over." [71] Since the right to counsel is the right to effective assistance of counsel,[72] *Coleman* requires us to evaluate Shepard's challenge with the increased solicitude appropriate when constitutional rights are at stake.[73] This we have done, and we are led to the conclusion that the District Court's disposition of Shepard's grievance should not be disturbed.

■ According to Shepard's brief on appeal, the purpose of his counsel's questions on cross-examination of the two Government witnesses was to show that "(a) there were no physical injuries to the Marshals; (b) there were severe injuries to Mr. Shepard rendering him unconscious; (c) the assault charge was brought as a subterfuge for the Marshals' own conduct; (d) the Marshals were provoked by disparaging

Fed.R.Crim.P. 5.1(a) now confirms that view. See Advisory Committee's Note thereto.

67. See note 54, *supra.*

68. See note 54, *supra.*

69. 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

70. *Id.* at 7–10, 90 S.Ct. 1999. The right to counsel at federal preliminary hearings is also statutorily granted. Criminal Justice Act of 1964, Pub.L. No. 88–455, § 2, 78 Stat. 552 (1964), as amended, 18 U.S.C. § 3006A(b)–(c) (1970).

71. "Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail." 399 U.S. at 9, 90 S.Ct. at 2003.

72. *E. g.,* Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932); United States v. Hammonds, 138 U.S.App. D.C. 166, 169–170, 425 F.2d 597, 600–601 (1970); Harried v. United States, 128 U.S.App.D.C. 330, 333–334, 389 F.2d 281, 284–285 (1967); Bruce v. United States, 126 U.S.App.D.C. 336, 340, 379 F.2d 113, 117 (1967).

73. Compare Brown v. Fauntleroy, 143 U.S. App.D.C. 116, 117 & n. 2, 442 F.2d 838, 839 & n. 2 (1971).

remarks by prisoners other than Mr. Shepard; (e) there was mass confusion in the cellblock seriously impeding the perception of the Marshals; and (f) there was evidence that Mr. Shepard acted in self-defense, if he acted at all." [74] The first difficulty we have encountered is that the handling of the cross-examination made this understanding all too difficult to come by. Cross-examination at a preliminary hearing, like the hearing itself, is confined by the principle that a probe into probable cause is the end and aim of the proceeding,[75] and the line between refutation of probable cause and discovery into the prosecution's case ofttimes is thin. Here counsel's purpose in propounding the questions which the presiding judge excluded was unquestionably blurred by the fact that counsel frequently appeared to be off on an impermissible quest for discovery. At no time prior to the rulings complained of did counsel delineate for the judge's edification the factual thesis he was seeking to promote. Only as the hearing neared its close, and after the rulings had been made, did counsel broach anything remotely similar to the defensive theory now explained on appeal.[76] Our reading of the hearing record leaves us with the conviction that the presiding judge, when ruling on counsel's questions, could hardly divine what counsel had in mind. Therefore, we cannot say that he committed error in barring responses to inquiries that seemed unrelated to the task of evaluating probable cause.

Moreover, cross-examination is properly to be limited at preliminary hearing, as at trial, to the scope of the witness' direct examination. To the extent that it is not—and here it was not —cross-examination ostensibly, even if undesignedly, becomes an effort at some sort of discovery. We do not suggest that magistrates may not indulge variations from the usual order of offering evidence, and during presentation of the Government's case permit the defense to get in elements of its own. But when cross-examination exceeds the range of direct examination unaccompanied by an elucidation of its connection with probable cause, it is small wonder that discovery is taken to be the examiner's goal.

An even more important consideration stems from the difference between the objective of the preliminary hearing and that of the trial. While, of course, conviction necessitates proof at trial of all elements of a crime beyond a reasonable doubt, it suffices for purposes of a binding over for trial that the evidence show "probable cause to believe that an offense has been committed and that the defendant has committed it." [77] The preliminary hearing is not a minitrial of the issue of guilt, but is rather an investigation into the reasonableness of the bases for the charge, and examination of witnesses thereat does not enjoy the breadth it commands at trial.[78] "A preliminary hearing," the Supreme Court has said, "is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." [79]

. It is the contrast of probable cause and proof beyond a reasonable

---

74. Brief for Appellants, at 12.

75. Part II(A), *supra*.

76. At that point counsel stated :
 If I could show in this preliminary hearing, Your Honor, that the reason this charge was brought was to cover up a wrongful assault on Mr. Shepard, and you would let me go into some of these questions as to who made the decision to charge and what Marshal Lonien [the witness] did afterwards, I think I could prove to Your Honor right now, before

the case goes over to District Court, that an assault didn't take place and this was a cover up.

77. That is the standard specified both in former Rule 5(c) and present Rule 5.1(a). See note 54, *supra*.

78. See California v. Green, 399 U.S. 149, 195–200, 90 S.Ct. 1930, 26 L.Ed.2d 489 (dissenting opinion) ; 8 J. Moore, Federal Practice § 5.1.02[3] (Cipes ed. 1965).

79. Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968).

doubt that inevitably makes for examinatorial differences between the preliminary hearing and the trial. Probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.[80] Proof beyond a reasonable doubt, on the other hand, connotes evidence strong enough to create an abiding conviction of guilt to a moral certainty.[81] The gap between these two concepts is broad. A magistrate may become satisfied about probable cause on much less than he would need to be convinced. Since he does not sit to pass on guilt or innocence, he could legitimately find probable cause while personally entertaining some reservations. By the same token, a showing of probable cause may stop considerably short of proof beyond a reasonable doubt, and evidence that leaves some doubt may yet demonstrate probable cause. In the instance before us, the testimony of two witnesses on direct examination furnished more than an ample foundation for a finding of probable cause which the cross-examination allowed did not impair. By our appraisal the convoluted defensive theory Shepard now says he wanted to develop[82] was not likely to change the result. Whatever its potency as a basis for a reasonable doubt at trial, its capability to dissolve enough of the Government's showing to negate probable cause strikes us as highly improbable. We speak not only of the cross-examination which was banned but also of the items of similar purport which on Shepard's presentation were excluded.[83] In any event, the situation is far too cloudy to warrant a grant of the extraordinary relief which Shepard seeks.

▆▆▆▆▆ Magistrates presiding over preliminary hearings, no less than judges presiding over trials, are endowed with broad powers to supervise examination of witnesses.[84] Beyond that, they should be indulged some leeway in their resolution of probable cause issues. Courts should not upset these judgmatic exercises unless a supervisory excess or a decisional error is clearly shown,[85] and we do not perceive either here. Shepard's counsel was permitted to cross-examine each Government witness closely as to the elements of his direct testimony and, for the reasons stated, we cannot say that disallowance of the questions ruled out was improper. For similar reasons, we are unable to say that the photographs and the questions as to the defense witness possessed such a tendency to dissolve probable cause that their exclusion was erroneous. A writ of mandamus lies only to enforce a plain, positive duty; it is not available to exact a response to a dubious claim.[86] At best, any obligation to reverse the rulings on the excluded evidence is entirely too unclear. We accordingly affirm as to Shepard.

## III. DANCIS' APPEAL

▆▆▆▆ Dancis, our third appellant, was charged with two violations of the Marijuana Tax Act.[87] The charges came on for ventilation at a preliminary hearing

80. Compare People v. Wisecarver, 67 Cal. App.2d 203, 153 P.2d 778, 781 (1944); Stroman v. Gilbert, 2 Conn.Cir. 179, 197 A.2d 99, 102 (1963); State v. Howland, 153 Kan. 352, 110 P.2d 801, 806–807 (1941).

81. See, e. g., McGill v. United States, 121 U.S.App.D.C. 179, 183–186 & n. 4, 348 F. 2d 791, 795–798 & n. 4 (1965).

82. See text *supra* at note 74.

83. See note 47, *supra*, and text *supra* following note 47.

84. United States v. Bates, 287 F.Supp. 657, 660–661 (E.D.Tenn.1968).

85. *Id.*

86. Laughlin v. Reynolds, 90 U.S.App.D.C. 414, 415, 196 F.2d 863, 864 (1952); Chapman v. Santa Fe Pac. R.R., 90 U.S. App.D.C. 34, 38, 198 F.2d 498, 502 (1951), cert. denied, 343 U.S. 964, 72 S.Ct. 1058, 96 L.Ed. 1361 (1952); Clark v. Memolo, 85 U.S.App.D.C. 65, 67, 174 F.2d 978, 980 (1949); Hammond v. Hull, 76 U.S.App.D.C. 301, 303, 131 F.2d 23, 25 (1942), cert. denied, 318 U.S. 777, 63 S.Ct. 830, 87 L.Ed. 1145 (1943).

87. 26 U.S.C. § 4742(a) (1964), which was since repealed by Pub.L. No. 91–513, tit.

over which a United States Magistrate presided. The magistrate denied his counsel's request for a subpoena requiring the attendance of an unnamed undercover agent, who apparently was the sole available eyewitness to the two marijuana transactions attributed to Dancis. The Government's only witness at the hearing was the agent's supervisor, whose testimony as to the alleged transactions was necessarily hearsay, and as to the transactor's identity was simply that the agent had identified Dancis from a six-year old photograph. The magistrate, on a finding of probable cause, held Dancis for grand jury action, and the District Court, in the case under review, held that the hearing was legally sufficient.

■■ Dancis argues that each of two flaws vitiated his preliminary hearing. One is that the magistrate's refusal to allow him access to the undercover agent's testimony was prejudicial error. The other is that the Confrontation Clause [88] outlaws the magistrate's finding of probable cause solely upon the hearsay testimony of the agent's supervisor.[89] We deem it unnecessary to reach the constitutional issue posed by Dancis' second contention [90] because we agree that he is on sound ground in advancing the first.[91]

**A. Defensive Evidence at Preliminary Hearings**

■■■ Former Rule 5(c) confirmed the right of an accused to "introduce ev-

III, § 1101(b)(3)(A), 84 Stat. 1291, 1292 (1970), which, however, left the prosecution unaffected. 84 Stat. 1294 (1970).

88. "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." U.S.Const. amend. VI.

89. The argument, as we understand it, is not that hearsay must be as totally excluded from preliminary hearings as it is from trials, but seems rather to be that the elements of probable cause dependent upon eyewitness observations cannot be established on a wholly hearsay basis. "Credible" hearsay may underlie an arrest warrant. E. g., United States v. Harris, 403 U.S. 573, 579, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Whiteley v. Warden, 401 U.S. 560, 567, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); United States v. Thornton, 147 U.S.App.D.C. 114, 117, 454 F.2d 957, 960 (1971). Hearsay may support a grand jury indictment. E. g., Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956); United States v. Callahan, 439 F.2d 852, 860 (2d Cir.), cert. denied, 404 U.S. 826, 92 S.Ct. 56, 30 L.Ed.2d 54 (1971); United States v. Aloisio, 440 F.2d 705, 707–708 (7th Cir.), cert. denied, 404 U.S. 824, 92 S.Ct. 49, 30 L.Ed.2d 51 (1971); United States v. Daddano, 432 F.2d 1119, 1125 (7th Cir. 1970), cert. denied, 402 U.S. 905, 91 S.Ct. 1366, 28 L.Ed.2d 645 (1971). Until recently, the question whether hearsay was admissible in preliminary hearings remained open with us, see Washington v. Clemmer, 119 U.S.App. D.C. 216, 339 F.2d 715, following remand, 119 U.S.App.D.C. 226, 229, 339 F.2d

725, 728 (1964); Ross v. Sirica, supra note 55, 127 U.S.App.D.C. at 18, 330 F.2d at 565; Howard v. United States, 128 U.S.App.D.C. 336, 341, 389 F.2d 287, 292 (1967), as was the question whether a finding of probable cause to hold the accused to answer may be predicated on hearsay evidence alone, e. g., Washington v. Clemmer, supra, 119 U.S.App.D.C. at 220, 339 F.2d at 719. See, however, id. at 225–226, 339 F.2d at 724–725 (statement of Judge [now Chief Justice] Burger). Now, however, Fed.R.Crim.P. 5.1(a) provides that the finding "may be based upon hearsay evidence in whole or in part." See note 54, supra.

90. We cannot accept the argument that Coleman v. Alabama, supra note 69, establishes the validity of that contention. Coleman vindicates the Sixth Amendment right to counsel at preliminary hearings, see Part II(B), supra. But Coleman did not touch the issue of right to confrontation at such hearings, and other decisions speak to the right of confrontation at trial. Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); California v. Green, supra note 78; Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). As stated in text, we do not reach the question on this appeal.

91. Constitutional questions are not to be resolved unless the need to do so is imperative. See, e. g., Rosenberg v. Fleuti, 374 U.S. 449, 451, 83 S.Ct. 117, 9 L.Ed.2d 97 (1963); Bush v. Texas, 372 U.S. 586, 590, 83 S.Ct. 922, 9 L.Ed.2d 958 (1963); Rescue Army v. Municipal Court, 331 U.S. 549, 568, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947).

idence in his own behalf" at his preliminary hearing.[92] It also imposed the requirement that an affirmative decision on probable cause be reached "on the evidence."[93] The specifications of present Rule 5.1(a) are identical.[94] Thus a federal preliminary hearing is not only the occasion upon which the Government must justify continued detention by a showing of probable cause, but also an opportunity for the accused to rebut that showing.[95] Rule 5(c) made it clear that it is as much the arrestee's prerogative to endeavor to minimize probable cause as it is the Government's to undertake to maximize it, and that both sides must be indulged reasonably in their respective efforts. And the Government's demonstration on probable cause must surmount not only difficulties of its own but also any attack the accused may be able to mount against it.[96]

In sum, "the evidence" which alone must guide resolution of the probable cause issue is the whole evidence—for the defense as well as for the prosecution. The magistrate must "listen to . . . [the] versions [of all witnesses] and observe their demeanor and provide an opportunity to defense counsel to explore their account on cross-examination."[97] The magistrate "sits as a judicial officer to sift all the evidence before resolving the probable cause issue. . . ."[98] He "cannot decline to issue subpoenas on the ground that only the Government's evidence is probative."[99]

These provisions of the Rules and our interpretations of them are now reinforced by the holding in Coleman v. Alabama [100] that the Sixth Amendment secures for the accused the assistance of counsel at a preliminary hearing having for its purpose a determination on probable cause to hold him for further proceedings.[101] Among counsel's potential contributions, the Court stated, is "skilled examination . . . of witnesses [which] may expose fatal weaknesses in the [prosecution's] case that may lead the magistrate to refuse to bind the accused over."[102] It cannot be gainsaid that what the Sixth Amendment mandated for Alabama's preliminary hearing it exacts equally for the federal preliminary hearing which, we repeat, is exclusively an exploration into probable cause to hold the accused to answer the prosecution further.[103] Nor can it be doubted that

92. See note 54, *supra.*

93. See note 54, supra.

94. See note 54, *supra.*

95. This the accused may undertake either by the production of witnesses of his own or by cross-examination of witnesses presented by the Government. See Part II (B), *supra.*

96. While the standard of probable cause which the Government must meet at preliminary hearings is roughly equivalent to the standard required for issuance of an arrest warrant or for an arrest without a warrant, see text *supra* at notes 77–81, the procedure at preliminary hearings differs from that upon the issuance of a warrant or a warrantless arrest in at least one very important respect. That difference is the presence of the accused at the preliminary hearing and his right to cross-examine prosecution witnesses and introduce evidence in his own behalf. Arrest warrants, on the other hand, are issued upon the Government's *ex parte* presentation to a magistrate, and warrantless arrests are made on information communicated *ex parte* to arresting officers. The traditional function of the preliminary hearing is a second determination on probable cause, this time after according the accused a reasonable opportunity to rebut it. Unless the accused is indulged in that respect, the preliminary hearing is little more than a duplication of the probable cause decisions that foreran his arrest.

97. Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 18, 380 F.2d at 565 (statement of Judges McGowan and Leventhal).

98. *Id.* at 12, 380 F.2d at 559.

99. *Id.*

100. *Supra* note 69.

101. 399 U.S. at 7–10, 90 S.Ct. 1999, 26 L.Ed.2d 387.

102. *Id.* at 9, 90 S.Ct. at 2003. See note 71, *supra.*

103. See Part II(A), *supra.*

*Coleman* demands more than the mere presence of counsel at the hearing. The right to counsel which *Coleman* declared would amount to no more than a pious overture unless it is a right to counsel able to function efficaciously in his client's behalf. The Sixth Amendment's guaranty of counsel is a pledge of effective assistance by counsel,[104] and *Coleman* makes it clear that federal preliminary hearings, as critical stages of criminal prosecutions, require no less. If the accused's counsel is reduced to a state of impotence in the discharge of this responsibility, it is evident that the accused is deprived of the very benefit which the Sixth Amendment's boon of counsel was designed to confer.[105]

So, an accused is normally entitled to subpoenas compelling the attendance at his preliminary hearing of witnesses whose testimony promises appreciable assistance on the issue of probable cause.[106] The test, our past utterances on the subject have indicated, couples the witness' materiality[107] with an absence of good cause for not requiring his presence,[108] and its operation does not depend upon which side might have been expected to call the witness.[109] Certainly an accused will not in every instance qualify for a subpoena for the production of a Government witness at his preliminary hearing, but where he succeeds in a plausible showing that that witness could contribute significantly to the accuracy of the probable cause determination, the request for the subpoena should be granted. "This," we have said, "is consistent with the principal purpose of the preliminary hearing as a mechanism to determine whether the evidence is adequate to establish probable cause."[110]

We think the testimony of the under-cover agent Dancis desired at his preliminary hearing met the standard of materiality. From aught that appears, he was the only available person who could testify to the two charged marijuana transfers from personal observation, and by the same token the only one who could directly identify the party responsible for them. Since probable cause to bind Dancis over for further prosecution depended on the caliber of the Government's showing that he was that party and that what he did on the two occasions under scrutiny was illegal, it seems clear that the witness he requested could have given testimony bearing critically upon those matters. In Washington v. Clemmer[111] it was the complainant in a rape case who was sought,

104. See cases cited *supra* note 72.

105. Compare White v. Ragen, 324 U.S. 760, 764, 65 S.Ct. 978, 89 L.Ed. 1348 (1945); Powell v. Alabama, *supra* note 72, 287 U.S. at 71, 53 S.Ct. 55, 77 L.Ed. 158; Newberry v. Wingo, 449 F.2d 344, 345 (6th Cir. 1971).

106. Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 13, 380 F.2d at 560; Washington v. Clemmer, *supra* note 89, 119 U.S. App.D.C. at 219, 329 F.2d at 718. See also United States v. Huff, 143 U.S. App.D.C. 163, 170, 442 F.2d 885, 892 (1971).

107. Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 13, 380 F.2d at 560; Washington v. Clemmer, *supra* note 89, 119 U.S.App.D.C. at 219, 339 F.2d at 718. As we stated in the latter case, those "[l]ikely to be called on this basis, in addition to alibi witnesses, are the complainant and other material witnesses named in the complaint who for some reason have not been called by the Government." 119 U.S.App.D.C. at 219, 339 F.2d at 718.

108. Limitations on the right to subpoena witnesses have been recognized where the witness is physically or psychologically unable to testify, Washington v. Clemmer, *supra* note 89, 119 U.S.App.D.C. at 219 n. 11, 339 F.2d at 718 n. 11, and where the witness' testimony could not, in light of other evidence, negative probable cause, Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 18 n. 4, 380 F.2d at 565 n. 4 (statement of Judges McGowan and Leventhal).

109. Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 12–13, 380 F.2d at 559–560; Washington v. Clemmer, *supra* note 89, 119 U.S.App.D.C. at 219, 339 F.2d at 718.

110. Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 13, 380 F.2d at 560.

111. *Supra* note 89.

and in Ross v. Sirica [112] the only three eyewitnesses to a murder. In both cases we held that denial of the accused's access to them was error,[113] and it appears to us that the sole eyewitness to the transgressions laid to Dancis was equally material.

 As we admonished in *Ross*, "[w]hatever the full reach of the accused's subpoena rights at a preliminary hearing, . . . he is entitled to compel the attendance of eyewitnesses unless, of course, 'because of physical or psychological disability in a particular case' such witnesses cannot attend." [114] That seems the more so when the nature of the Government's presentation at Dancis' preliminary hearing is taken fully into account. The Government offered but one witness, and he could testify on the vital issues of offenses and identity only from hearsay, and it is evident that that weakened the showing. To the extent that hearsay is employed, the effort to establish probable cause becomes more prone to attack since the reliability of the absent hearsay declarant always becomes an added factor to be reckoned with. In *Ross*, where, similarly to Dancis' case the Government's one witness at a preliminary hearing on a murder charge was a police officer who could merely relay what three eyewitnesses had told him about the crime, two judges of this court aptly observed, without dispute from the rest, that

> A judicial officer engaged in a judicial determination of probable cause can hardly rest easy solely with the hearsay account of the policeman of

what these eyewitnesses told him if the eyewitnesses can be available, so that he can listen to their versions and observe their demeanor, and provide an opportunity to defense counsel to explore their account on cross-examination. The presence of those witnesses impresses us as falling within the orbit of the rights conferred upon the accused by the fourth sentence of Rule 5(c). . . . [115]

Indeed, the problem addressed in *Ross* is compounded in the situation before us now. The Government's evidence at Dancis' preliminary hearing was not only hearsay but also hearsay without any apparent means of refutation whatever. The undercover agent was not only absent from the hearing but at the time was also totally unidentified. He did not sign the complaint against Dancis, nor was he named in it, and the testimony at the hearing referred to him simply by his code name "John P." Defense counsel's inquiries on cross-examination as to his real name, and even as to generic characteristics,[116] drew objections from the Government which the magistrate sustained. There was little or nothing in the Government's presentation to lend credit to the reliability of either the agent or the observations purportedly incriminating and identifying Dancis. It is difficult to imagine a case wherein the accused was more helpless to defend against a hearsay attribution of probable cause.

To say, as we do, that the testimony of the absent witness was material does not mean necessarily that the refusal of

---

112. *Supra* note 55.

113. Ross v. Sirica, *supra* note 55, 127 U.S.App.D.C. at 14, 380 F.2d at 561; Washington v. Clemmer, *supra* note 89, 119 U.S.App.D.C. at 228, 339 F.2d at 727.

114. Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 13, 380 F.2d at 560, quoting Washington v. Clemmer, *supra* note 89, 119 U.S.App.D.C. at 219, n. 11, 339 F.2d at 718 n. 11.

115. Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 18, 380 F.2d at 565 (state-

ment of Judges McGowan and Leventhal) (footnote omitted). See also Washington v. Clemmer, *supra* note 89, 119 U.S.App. D.C. at 229, 339 F.2d at 728.

116. When defense counsel inquired of the undercover officer's supervisor on cross-examination "Now, what is John P's full name?" "What is the officer's nationality?" "What is the officer's race?", the magistrate sustained objections from the Government to each question.

the subpoena was error vitiating the preliminary hearing. A refusal may be justified, and if it is a finding of probable cause climaxing the hearing must stand.[117] The record before us, however, is singularly devoid of any such justification. There is no hint that the undercover officer was physically unamenable to a subpoena or in any way disabled from responding to it.[118] There is no suggestion that his information about the episodes under exploration was to any extent privileged from compulsory disclosure.[119] Nor is there a basis for attributing the denial of the subpoena to the exigencies of any undercover operation.[120] The magistrate did not predicate the denial upon any of these grounds, nor did the Government even urge any of them. And to the extent that the record may furnish indications that the magistrate was satisfied on probable cause without hearing from the undercover agent,[121] it suffices to repeat that the issue thereon cannot properly be resolved without accommodating reasonable demands of the prosecution and the defense for the production of evidence capable of shaping the outcome.[122]

## B. *Return of Indictment*

Concluding as we do that the magistrate erred in refusing Dancis the benefit of the undercover officer's testimony, we are left to determine how the mistake should be corrected. The first question confronting that effort is whether the indictment returned against Dancis forecloses rectification of the error. It is well settled that an indictment itself establishes sufficient probable cause for holding the accused for trial,[123] and that explains why we have consistently held that he is not entitled to a preliminary hearing where he is indicted before a hearing is held. Typical situations are those wherein the accused is indicted prior to arrest on the charges,[124] or prior to the date set for preliminary hearing on the charges,[125] or where he is in custody on another charge when indicted.[126] In none of these instances can a preliminary hearing serve a need to probe probable cause to detain the accused, for the indictment has fulfilled that need.[127] Nor can the hearing be invoked merely as a device for obtaining discovery, for discovery independent of the ascertainment of

117. See note 108, *supra*, and accompanying text.

118. See note 108, *supra*, and accompanying text.

119. Compare McCray v. Illinois, 386 U.S. 300, 311, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Rugendorf v. United States, 376 U.S. 528, 534–535, 84 S.Ct. 825, 11 L.Ed. 2d 887 (1964); Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); United States v. Skeens, 145 U.S.App.D.C. 404, 407–408, 449 F.2d 1066, 1069–1071 (1971).

120. Compare Robinson v. United States, 148 U.S.App.D.C. 58, 61–62, 459 F.2d 847, 850–851 (1972); Ross v. United States, 121 U.S.App.D.C. 233, 235, 349 F.2d 210, 212 (1965). We note that Dancis' preliminary hearing was not reached until three months after the date of the alleged offenses, with the result that any ongoing undercover operation on the latter date may have terminated prior to the preliminary hearing.

121. See Ross v. Sirica, *supra* note 55, 127 U.S.App.D.C. at 18 n. 4, 380 F.2d at 565 n. 4 (statement of Judges McGowan and Leventhal).

122. See text *supra* at notes 95–99.

123. Costello v. United States, *supra* note 89, 350 U.S. at 363, 76 S.Ct. 406, 100 L. Ed. 397; Ex parte United States, 287 U.S. 241, 250, 53 S.Ct. 129, 77 L.Ed. 283 (1932); Howard v. United States, *supra* note 89, 128 U.S.App.D.C. at 341–342, 389 F.2d at 293–294; Crump v. Anderson, 122 U.S.App.D.C. 173, 175–177, 352 F.2d 649, 651–653 (1965).

124. United States v. Lewis, 140 U.S.App. D.C. 40, 42 n. 3, 433 F.2d 1146, 1148 n. 3 (1970). See also Godfrey v. United States, 122 U.S.App.D.C. 285, 286, 353 F.2d 456, 457 (1965).

125. Crump v. Anderson, *supra* note 123, 122 U.S.App.D.C. at 175–180, 352 F.2d at 651–656.

126. Clemons v. United States, 133 U.S.App. D.C. 27, 44 n. 19, 408 F.2d 1230, 1247 n. 19 (en banc 1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969); Walker v. Rodgers, 128 U.S. App.D.C. 420, 389 F.2d 961 (1968).

127. See Part II(A), *supra*.

probable cause is not one of its functions.[128]

 The case before us, however, is markedly different. Dancis was given a preliminary hearing on the pending charges prior to return of the indictment. At that hearing, by his allegation, he was denied the right then conferred by former Rule 5(c) to examine a witness in his own behalf. That contention, we think, keeps Dancis in court despite the post-hearing rendition of the indictment.

Where in terms of the requirements of the Rules, a preliminary hearing is defective, the accused is obviously entitled to a reopening of the hearing to enable remediation of the defect if that can be done before a grand jury acts in the matter. "To say that the preliminary hearing[] [was] defective is to say that the determination of probable cause was inadequate and should not operate to deprive the accused of his liberty pending grand jury consideration."[129] Accordingly, we have not hesitated to direct a supplemental preliminary hearing on demonstration that at the original hearing the accused did not get his just due.[130] That remedy, of course, is additional to the accused's prerogative to seek a dissolution of the commitment itself.[131]

We have, moreover, adhered to the view that such a deprivation can be remedied by a reopening of the hearing even after return of an indictment. The indictment bars relitigation of the question of probable cause, of course, but the fact remains that save for disrespect of the accused's rights he would have enlarged his insight into the Government's case against him—as a by-product of efforts pro and con on probable cause in the course of the Government's submission. Since, however, a Rule 5(c) right was dishonored, the accused lost a part of that by-product, and we have held that the hearing should be reopened to afford the accused an opportunity to retrieve the part which has been lost.[132]

That is the rationale of our past decisions respecting post-indictment supplemental preliminary hearings. The supplemental hearing was not an occasion for a reexamination of probable cause, for the indictment had settled that issue. Nor was its purpose discovery for its own sake, but only such discovery as would inexorably have accompanied scrupulous observance of the Rule 5(c) right. Reopening of the preliminary hearing, then, emerged as both an appropriate sanction for and remediation of Rule 5(c) violations, not unlike, though less drastic than, the more familiar sanction of former Rule 5(a) which the Supreme Court's *Mallory* decision supplied.[133] The effect of the supplemental hearing was to confer upon the accused the benefit of only so much incidental discovery as would have been his but for the infringement of Rule 5(c).[134]

Since our development of this prophylactic doctrine, however, the Federal

128. See Part II(A), *supra*.

129. Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 16, 380 F.2d at 563 (statement of Judges McGowan and Leventhal).

130. Washington v. Clemmer, *supra* note 89, 119 U.S.App.D.C. at 221, 339 F.2d at 720, 119 U.S.App.D.C. at 228, 339 F.2d at 727.

131. See Di Cesare v. Chernenko, 303 F.2d 423, 424 (4th Cir. 1962).

132. Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 13–14, 380 F.2d at 560–561.

133. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). By the doctrine of that case, statements obtained from an arrestee after unreasonable delay in presenting him to a commissioner (now a magistrate) are excluded from the evidence at trial. See also McNabb v. United States, 318 U.S. 332, 346, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

134. Ross v. Sirica, *supra* note 55, 127 U.S.App.D.C. at 12 n. 5, 380 F.2d at 559 n. 5; *id.* at 16–17, 18–19, 380 F.2d at 563–564, 565–566 (statement of Judges McGowan and Leventhal); Blue v. United States, *supra* note 55, 119 U.S. App.D.C. at 320–322, 342 F.2d at 899–901.

Magistrates Act [135] was adopted, and the question becomes whether the Act has set the doctrine for naught. The Act lays down the broad mandate that an arrestee be offered a preliminary hearing,[136] the date for which must be fixed at his initial appearance before a judge or magistrate after his arrest.[137] The hearing must be conducted "within a reasonable time following initial appearance, but in any event not later than" ten days where the arrestee remains in custody [138] or twenty days where he is enlarged in the interim.[139] The Act specifies, however, in Section 303(e) that "[n]o preliminary examination . . . shall be required to be accorded an arrested person . . . if at any time subsequent to the initial appearance of such person before a judge or magistrate and prior to the date fixed for the preliminary examination . . . an indictment is returned. . . . " [140]

We need not ponder whether the Act erects a barrier to a post-indictment pretrial reopening of a preliminary hearing which is seriously defective under the criteria specified in the Rules. To be sure, the remedy we provided in Ross v. Sirica,[141] in circumstances comparable to those here, was a remand to the magistrate for a supplemental hearing.[142] But *Ross*, like other decisions in its day, rested on the theory that discovery was as much a function of the preliminary hearing as an investigation into probable cause to bind the accused for further prosecution.[143] The Act was passed after *Ross* was decided, and whether or not it imposed an absolute ban on reopenings of preliminary hearings, it certainly destroyed discovery as a reason for ordering a reopening.[144] Furthermore, nothing in *Ross* nor in any of our other holdings inexorably required a supplemental hearing when another procedure might do equal or superior service. On the contrary, it was our uniform practice to relegate the problem of remediation, not to the magistrate, but to the trial judge when the deficiency in the preliminary hearing first came to light after the accused had been convicted.[145]

▆ Even more importantly, *Ross* predated not only the Act but also the Supreme Court's decision in Coleman v. Alabama,[146] and *Coleman* introduced an element of the remedy problem which this court has not hitherto had occasion to consider. To put in a nutshell what we later elucidate, *Coleman* identifies the constitutional right to effective assistance of counsel as an incident of preliminary hearings and assures vindica-

---

135. Pub.L. No. 90–578, tit. III, § 303(a), 82 Stat. 1107, 1117 (1968), 18 U.S.C. § 3060(a) (1970).

136. *Id.*

137. Pub.L. No. 90–578, tit. III, § 303(b), 82 Stat. 1107, 1117 (1968), 18 U.S.C. § 3060(b) (1970).

138. Pub.L. No. 90–578, tit. III, § 303(b)(1), 82 Stat. 1107, 1117 (1968), 18 U.S.C. § 3060(b)(1) (1970).

139. Pub.L. No. 90–578, tit. III, § 303(b)(2), 82 Stat. 1107, 1117 (1968), 18 U.S.C. § 3060(b)(2) (1970).

140. "No preliminary examination in compliance with subsection (a) of this section shall be required to be accorded an arrested person, nor shall such arrested person be discharged from custody or from the requirement of bail or any other con-

dition of release pursuant to subsection (d), if at any time subsequent to the initial appearance of such person before a judge or magistrate and prior to the date fixed for the preliminary examination pursuant to subsections (b) and (c) an indictment is returned or, in appropriate cases, an information is filed against such person in a court of the United States." Pub.L. No. 90–578, tit. III, § 303(e), 82 Stat. 1107, 1117 (1968), 18 U.S.C. § 3060(e) (1970).

141. *Supra* note 55.

142. 127 U.S.App.D.C. at 14, 380 F.2d at 561.

143. See *id.* at 12, 380 F.2d at 559.

144. See Part II(A), *supra*.

145. See cases cited *infra* note 160.

146. *Supra* note 69.

tion of that right.[147] It is evident, then, that the return of an indictment against the accused cannot eliminate the need for procedures of some kind to redress violations of the *Coleman* right.[148] On the other hand, the *Coleman*-type remedy, when invoked prior to trial, embraces an array of alternatives for dissipating potential prejudice.[149] So, even if a reopening of the hearing survives the Act as one of these alternatives, Dancis cannot compel that particular choice.

Mandamus is an extraordinary remedy,[150] available only to enforce a clear, unequivocal duty.[151] It does not lie to control an exercise of judgment.[152] Dancis, we say, is entitled, notwithstanding the indictment, to protection against injury resulting from the magistrate's mistake.[153] But Dancis is not necessarily entitled to receive that protection through a supplemental hearing before the magistrate, assuming even that the Act leaves that course open as a possibility. Additionally, as we later discuss, a supplemental hearing suffers by comparison with other alternatives

open in this case.[154] It is unnecessary, then, for us to decide whether in any event such a hearing would be available after an indictment has issued, and that decision we pretermit to another day.

### C. *The Remedy*

Coleman v. Alabama [155] bestowed upon Dancis an inviolable right to protection against harmful consequences flowing from the magistrate's refusal to permit examination of the undercover agent at the preliminary hearing.[156] *Coleman* also offers guidance as to the proper course to be taken where, following trial and conviction, the accused seeks to remedy a constitutional deficiency in his preliminary hearing. In *Coleman*, the Court could not determine from the record whether the absence of counsel from the accused's preliminary hearing actually worked prejudice at his trial, so it vacated the conviction and remanded the case to the Alabama courts for an inquiry on that score.[157] In the event that prejudice was found, the remedy would be a new trial; but if, applying the test set out in Chapman v. California,[158] it was found that the in-

147. See text *infra* at notes 155–159. See also text *supra* at notes 69–73, 100–105.

148. See Coleman v. Alabama, *supra* note 69, 399 U.S. at 10–11, 90 S.Ct. 1999, 26 L.Ed.2d 387 and cases cited *infra* note 160.

149. See text *infra*.

150. Will v. United States, 389 U.S. 90, 95–96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); Thornton v. Corcoran, 132 U.S. App.D.C. 232, 234, 407 F.2d 695, 697 (1969); Jones v. Gasch, 131 U.S.App. D.C. 254, 265, 404 F.2d 1231, 1242 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1414, 20 L.Ed.2d 286 (1968).

151. See cases cited *supra* note 85.

152. In re Flasphaler, 97 U.S.App.D.C. 82, 228 F.2d 53, cert. denied, 351 U.S. 973, 76 S.Ct. 1033, 100 L.Ed. 1491 (1956); Dilling v. United States, 79 U.S. App.D.C. 47, 142 F.2d 473 (1944); Bartlesville Zinc Co. v. ICC, 58 App. D.C. 316, 317, 30 F.2d 479, 480, cert. denied, 279 U.S. 856, 49 S.Ct. 351, 73 L.Ed. 997 (1929); United States ex rel. Abilene & S. Ry. v. ICC, 56 App.D.C. 40,

41, 8 F.2d 901, 902, cert. denied, 270 U.S. 650, 46 S.Ct. 351, 70 L.Ed. 781 (1926).

153. Compare Ross v. Sirica, *supra* note 55, 127 U.S.App.D.C. at 13–14, 380 F.2d at 560–561; Blue v. United States, *supra* note 55, 119 U.S.App.D.C. at 320, 342 F.2d at 899; and cases cited *infra* note 160.

154. See text *infra*.

155. *Supra* note 69.

156. 399 U.S. at 7–10, 90 S.Ct. 1999, 26 L.Ed.2d 387. See also text *supra* at notes 69–73, 100–105.

157. *Id.* at 10–11, 90 S.Ct. 1999.

158. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman*, it was held that before a federal constitutional error can be held "harmless," the court must be of the belief that it was harmless beyond a reasonable doubt. 386 U.S. at 24, 87 S.Ct. 824. The court must find that there is no reasonable possibility that the error complained of might have contributed to the conviction. *Id.* See Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

firmity in the preliminary hearing was harmless, the conviction would be reinstated.[159] Even prior to *Coleman,* as we have said, in our own post-conviction decisions we have settled upon the same remedial course where serious flaws in preliminary hearings left them infirm.[160]

These decisions chart the route to be traveled when the error is judicially detected only after conviction. But that is not Dancis' situation, for while he has been indicted he has not yet been tried. Dancis could, of course, proceed to trial secure in the knowledge that should he encounter prejudice because of the refusal of the subpoena requested at his preliminary hearing, any conviction would have to be set for naught. But it would be senseless to require him to undergo trial and conviction before undertaking to repair the defect. On the contrary, we have emphasized that one deprived of his just due at a preliminary hearing not only may, but ordinarily must, seek rectification in court immediately.[161] This position may reflect the undesirability of permitting an accused to withhold his complaint until after he has lost a gamble on the jury's verdict. In any event, it certainly reflects a decided preference to avert prejudice before it occurs rather than to wait and deal with it after the fact.

We think, too, that the problem of remediation arising pretrial, no less than when it emerges after conviction, is one to be addressed by the court itself. There is nothing to be gained, over and above handling by the judge, by sending the case back to the magistrate for a supplemental preliminary hearing after the accused has been indicted. The magistrate cannot rein-

vestigate probable cause, for the indictment establishes its existence, nor is there anything else that officer can do that the judge cannot do better. The concern is that the accused may suffer prejudice at his forthcoming trial by the infringement of his rights at the hearing, and avoidance of prejudice is the function and duty of the judge himself. Obviously the judge could not, by directing the magistrate to reopen the preliminary hearing, shift his own responsibility to the magistrate. In our view, where an unmitigated blunder at a preliminary hearing may infect the ensuing trial, the court is obligated to scrutinize the accused's claim of possible injury, and to take appropriate corrective action.

We perceive no reason why, in the circumstances presented, the problem at hand cannot be fully accommodated within the framework of the criminal prosecution pending against Dancis. The judge who is to preside at Dancis' trial is amply equipped to dissipate whatever risk of prejudice was bred by Dancis' inability to call the undercover officer as a witness at his preliminary hearing. There are opportunities uniquely open to the trial judge, particularly with the cooperation of the parties, to seek remediation of the magistrate's error before any real damage is done, and the judge is free to draw upon his imagination in the kind of remedy-fashioning which traditionally has been a prerogative of the federal judiciary. Moreover, it would be advantageous to the prosecution and the accused alike to eliminate the problem from the realm of future litigation.

The indictment against Dancis named the undercover agent, and it may well be

---

159. 399 U.S. at 10–11, 90 S.Ct. 1999.

160. Holmes v. United States, *supra* note 55, 125 U.S.App.D.C. at 188–189, 370 F.2d at 210–211; Dancy v. United States, *supra* note 55, 124 U.S.App.D.C. at 61, 62, 361 F.2d at 78, 79. See also Ross v. Sirica, *supra* note 55, 127 U.S.App.D.C. at 12 n. 5, 380 F.2d at 559 n. 5. *Cf.* Shelton v. United States, 120 U.S.App. D.C. 65, 66, 343 F.2d 347, 348, cert.

denied, 382 U.S. 856, 86 S.Ct. 108, 15 L.Ed.2d 93 (1965); Blue v. United States, *supra* note 55, 119 U.S.App.D.C. at 320–322, 342 F.2d at 899–901.

161. Ross v. Sirica, *supra* note 55, 127 U.S. App.D.C. at 14, 380 F.2d at 561; Blue v. United States, *supra* note 55, 119 U.S. App.D.C. at 321–322 & n. 7, 342 F.2d at 900–901 & n. 7.

that he testified before the grand jury. If so, the trial judge might consider making the agent's grand jury testimony available to defense counsel. Alternatively, since after indictment the Government no longer has had an interest in keeping the agent's identity secret, and obviously will have to produce him as a witness at trial, a voluntary interview may be indicated. If need be, the judge might set appropriate bounds for an interview and arrange for the agent's participation therein. It may be that, by consent of the parties and approval of the judge, a deposition by written interrogatories to the agent would suffice as an expedient. Without any effort to exhaust the possibilities, we make these observations simply as suggestions of procedures calculated to safeguard Dancis against prejudice consistently with an orderly and expeditious progression of the case to trial. The point we do emphasize is that the judge is in a position to do anything the magistrate could now undertake, and indeed to do a great deal more. We leave for the trial judge, in the first instance, the decision on suitable relief.

The judgment appealed from is reversed insofar as it denied the requested declaration that Dancis' preliminary hearing was rendered defective by the magistrate's refusal to allow a subpoena commanding the appearance of the undercover agent as a witness, and the case is remanded to the District Court in order that such a declaration may be made.[162] In all other respects, the judgment is affirmed, but without prejudice to steps in the criminal proceeding pending against Dancis which are designed to appropriately remedy the error committed at his preliminary hearing.

So ordered.

FAHY, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in Part I (the Coleman case) of Judge Robinson's very careful and scholarly opinion. I also concur in Part III (Dancis' appeal). As to Part II (Shepard's appeal) I am of a different view. I think the cross-examination of the principal government witness was unduly restricted at the preliminary hearing. Unless subsequent events which are not considered by the court should lead to a different disposition of his case, I think he is entitled to a supplemental preliminary hearing.

I accept the position that the purpose of the preliminary hearing was to determine probable cause and not to obtain discovery, but the effort of defense counsel in the cross-examination was to elicit testimony which bore upon the issue of probable cause. Shepard had been identified by the principal government witness as the one who had made the involved assault upon him. The magistrate explicitly recognized that the cross-examination was designed to impeach this witness. Defense counsel was endeavoring to show a situation of pandemonium in a cellblock, in which the officer's identification of Shepard as the one who attacked him might have been mistaken due to a general melee following racial slurs and an attack upon Shepard himself, who was felled and rendered unconscious with a fractured skull. Moreover, in the cross-examination counsel was not only seeking to test the credibility of the complaining witness but, in a good faith and intelligent, lawyer-like manner, was seeking to bring before the magistrate a fair exposition of what occurred, which had by no means been adequately developed by the government's witnesses. Thus, after being repeatedly rebuffed, counsel stated:

MR. AXELROD [defense counsel]: If I could show in this preliminary hearing, Your Honor, that the reason this charge was brought was to cover up a wrongful assault on Mr. Shepard, and you would let me go into some of these questions as to who made the

---

162. We leave for the District Court's determination the question whether the declaration should be made on an individual or class basis. See note 4, *supra*.

decision to charge and what Marshal Lonien [the complaining witness being examined] did afterwards, I think I could prove to Your Honor right now, before the case goes over to the District Court, that an assault didn't take place and this was a cover up. (P. 26 of Transcript of Preliminary Hearing.)

THE COURT: Sir, you have heard what I said as to limitations I am placing on the evidence that will be admitted on this preliminary hearing. Within the scope of those limitations, you may proceed.

The limitations in my opinion deprived the defense of a fair opportunity to probe the issue of probable cause as contemplated by Rule 5, F.R.Crim.P.

It is clear that in seeking to impeach a witness on cross-examination counsel may question him on matters affecting credibility, including his lack of knowledge or perceptive capacity, his bias or his adverse interest in the litigation, and including also any prior inconsistent statements or acts. Rule 611(b) of the proposed new Rules of Evidence explicitly grants the right to go beyond the scope of the direct in cross-examination of a witness in a jury trial, with discretion in the judge as indicated:

A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interests of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination.

Here the witness was the complaining witness, and the cross-examination was not before a jury during a trial but before a judge at a preliminary hearing, during which both hearsay and otherwise inadmissible evidence may be presented. Rule 5.1, F.R.Crim.P., effective October 1, 1972. The overly restrictive limitations imposed upon counsel are not in keeping with these developments.

Moreover, "discovery" by the time-honored method of seeking the truth—

proper cross-examination—provided at a preliminary hearing the discovery is incidental to the issue of probable cause, is in line with the modern trend for greater discovery in criminal proceedings.

Unless intervening events which, as I have said, we have not considered, should preclude it, I would require that Shepard now be given a supplemental probable cause hearing. Only about an hour would be consumed.