In the Matter of R. D. S., Appellant.

No. 10925.

District of Columbia Court of Appeals.

Argued May 28, 1976.

Decided June 4, 1976.

Rehearing and Rehearing En Banc Denied
July 12, 1976.

William J. Mertens, Washington, D. C., appointed by the court, for appellant.

Dante J. Romanini, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, and Michael J. Dowd, Jr., Asst. Corp. Counsel, Washington, D. C., were on the pleading, for appellee District of Columbia.

Before REILLY, Chief Judge,* and NEBEKER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant is a 15-year-old juvenile who was charged in a delinquency petition with first-degree burglary and robbery. D.C. Code 1973, §§ 22–1801(a) and –2901. On the morning following his arrest, pleas of not guilty were entered and a factfinding hearing was scheduled for July 1, 1976. Appellant was in aftercare status on an earlier delinquency commitment to the Social Rehabilitation Administration, and SRA recommended that he be detained pending the factfinding hearing. A probable cause hearing then was conducted, with testimony being presented by the arresting officer. The trial judge denied a defense request that the hearing be continued to permit the possible issuance of a subpoena for the complaining witness to testify on the question of probable cause. That ruling presents the sole question on appeal. We affirm.

I

The testimony adduced at the probable cause hearing was hearsay in nature. As to the alleged offense, the arresting officer stated:

> The complainant told me that a person that lives [in an apartment] up above her, [R.D.S.], came to her door one evening on March 5th at approximately 10:45 and asked to use the telephone. She let him in. Once inside, he grabbed her, knocked her down, reached into her bra, took out her wallet containing $65, and fled with the other subject.

The complainant immediately reported the incident to the police; they responded within 15 minutes. The victim identified her assailant to the police as R.D.S., who lived upstairs. They went to the designated apartment, which was occupied by appellant's father. The father told the police that appellant then was living with his mother at another address, so no arrest was made at that time.[1]

The limited record is somewhat vague as to what happened between then and the ultimate arrest of appellant on May 24, slightly more than 11 weeks after the alleged robbery. Certain police follow-up efforts were undertaken in the interim.[2] On the night of May 24, two officers visited the complainant. She told them appellant had just knocked on her door, and that he went upstairs to his father's apartment when she refused entry to him. The police then went upstairs and arrested appellant.

As is customary, counsel was appointed the next morning to represent appellant.

---

* Chief Judge Reilly, a member of the court's Motions Division for the month of May, participated in this decision through access to the pleadings and the tape recording of the oral argument.

1. Appellant had been in his mother's custody until a week prior to this incident. However, she had advised SRA that appellant was beyond her control. On February 26, custody was transferred to the father.

2. The officer testified: "It took the police to the 24th of May to interview [the complainant] for the—about the third or fourth or fifth time, I'm not sure."

Counsel had somewhat more than an hour in which to discuss the matter with appellant prior to their appearance before the New Referrals judge. After the arresting officer testified as to probable cause, defense counsel pointed out that he had had no time within which to seek an interview with the complainant to determine whether to try to have her compelled to testify on the issue of probable cause.[3] He expressed considerable interest in the length of time between the alleged offenses and the arrest, particularly since the complainant apparently saw appellant quite frequently in the interim. No proffer of any sort, however, was made as to how complainant's testimony could be expected to negate probable cause.

## II

 When a juvenile is detained pending a factfinding hearing, an interlocutory appeal is permissible under D.C.Code 1973, § 16–2327(a).[4] We are required to expedite such appeals.[5] The Family Division has considerable discretion in deter-

mining whether to order an accused juvenile detained pending a factfinding hearing. *See* D.C.Code 1973, §§ 16–2310 and –2312(d); Super.Ct.Juv.R. 106(a). Nonetheless, a finding of "probable cause to believe the allegations in the [delinquency] petition are true" is a prerequisite to a valid order of detention. D.C.Code 1973, § 16–2312(f). Accordingly, we agree with appellant's underlying contention that the Family Division's probable cause determination properly is subject to review in an interlocutory appeal brought under § 16–2327. *Cf. In re M.L.DeJ.*, D.C.App., 310 A.2d 834 (1973).

We cannot, however, agree with appellant's argument that the trial court abused its discretion in refusing a continuance of the probable cause hearing.[6] Appellant relies principally upon § 16–2312(e) of the Code, which provides:

When a judge finds that a child's detention or shelter care is required under the criteria of section 16–2310, he shall then hear evidence presented by the Corporation Counsel to determine whether

3. Counsel candidly acknowledged to the trial court: "Perhaps after an interview with the complaining witness, we will decide not to ask her to come to Court to testify, but I would request that we be granted that opportunity." In the pleading which appellant's counsel submitted to this court, he stated: "In an ordinary case it would probably be a tactical mistake for a respondent to attempt to subpoena a complaining witness to a probable cause hearing."

4. When an adult defendant is unable to satisfy his conditions of release and hence remains incarcerated pending trial, he is obliged to seek review of those conditions by the trial court under § 23–1321(d) of the Code before an appeal may be taken to this court under § 23–1324. There is no comparable statute for juveniles, but Super.Ct.Juv.R. 107 operates to give a juvenile the right (1) to ask the detaining judge to reconsider his ruling, and (2) to toll the two-day interlocutory appeal time limitation while such reconsideration is being sought from the trial court. The common use of printed forms in juvenile detention cases often has made it necessary for us to remand appeals of detention orders for a more complete exposition of the reasons for

their adoption. *See, e. g., In re M. L. DeJ.*, D.C.App., 310 A.2d 834 (1973). Accordingly, in the interest of efficiency, we encourage utilization of the reconsideration provisions of Juvenile Rule 107.

5. Appellant's counsel, undoubtedly through mere inadvertence, failed to comply with this court's Rule 4 III(a), which places certain obligations upon counsel to facilitate our handling of expedited appeals. In turn, however, counsel waived the requirement of § 16–2327 (b) that we decide the appeal within one day following oral argument so as to permit time for adequate consideration of appellant's careful analysis of the question of law presented. (Appellant's memorandum of law was filed after oral argument.)

6. Section 16–2312(g) of the Code precludes postponement of a determination as to whether detention (or shelter care) is required for a Family Division respondent, but does permit a continuance for a probable cause hearing "for a period not to exceed five days." Thus, when detention is decided upon at the New Referral hearing but the hearing on probable cause is continued, detention in the interim is routine.

there is probable cause to believe the allegations in the petition are true. The child, his parent, guardian or custodian may present evidence on the issues and be heard in their own behalf.

█ While the purpose of a preliminary examination in a case involving an adult in the Criminal Division (*i. e.*, whether "there is probable cause to believe that an offense has been committed and that the defendant has committed it" so that the court may "forthwith hold him to answer in the court having jurisdiction") [7] is somewhat different from the purpose of a probable cause hearing in a case involving a juvenile (*i. e.*, whether the respondent validly may be detained), appellant correctly recognizes that "the issue and procedures are the same." Appellant cites *Coleman v. Burnett*, 155 U.S.App.D.C. 302, 477 F.2d 1187 (1973), in support of his position. However, we find that case inapposite.

*Coleman v. Burnett* dealt with an adult defendant, and was decided in the context of the former Fed.R.Crim.P. 5(c), which did not negate discovery as a purpose of a preliminary examination. Of particular relevance here is the present Super.Ct.Cr. R. 5(c)(1), which includes the following three provisions:

> The purpose of a preliminary examination is not for discovery. * * * The finding of probable cause may be based upon hearsay evidence in whole or in part. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf.

The Superior Court's Juvenile Rules do not include a counterpart to Criminal Rule 5(c)(1), although the general principles thereof are applicable to both types of proceedings. Appellant does not contend that he had a right to use the probable cause phase of the hearing for discovery purposes, nor does he challenge the propriety of the hearsay nature of the testimony adduced. Rather, he argues for a broad interpretation of the final portion of § 16-2312(e) of the Code, which gives juvenile respondents the right to "present evidence on the issues and be heard in their own behalf." [8]

█ A delinquency respondent has the same basic rights in a probable cause hearing as an adult alleged offender does in a preliminary examination, *i. e.*, to cross-examine government witnesses and introduce evidence on his own behalf on the question of probable cause. However, a respondent's right to present evidence and be heard does not connote the right to determine in effect who the government's witnesses shall be.[9] This is not to say, however, that a judge presiding over a probable cause hearing may never issue a subpoena for the appearance of a witness whom the government elects not to produce. Rather, it is to say that here the complaining witness could only have been considered to be presumptively hostile to the interests of the respondent, for she readily had recognized him and had sought his arrest for many weeks. Her testimony properly could have been compelled only if a meaningful proffer (*i. e.*, one based on

---

7. Super.Ct.Cr.R. 5(c)(1), which is similar to Fed.R.Crim.P. 5.1(a).

8. It should be noted that § 16-2312 is broad in scope, as it is applicable to cases involving neglect and children allegedly in need of supervision as well as to delinquency respondents who are charged with violations of law.

9. There are a number of valid reasons for the government not to present the complaining witness at a probable cause hearing. Included among these are the inconvenience to the complainant, the risk of harassment and intimidation, and premature discovery of the precise testimony of prosecution witnesses. While probable cause may be established solely by hearsay testimony (and that testimony normally will give the respondent a rather clear picture of the nature of the charges against him), such testimony must be adequate to demonstrate probable cause to the court's satisfaction, or the respondent must be released. D.C.Code 1973, § 16-2312(f).

more than mere hope or speculation) had been made as to how her participation at that stage of the proceedings would have tended not to affirm, but to negate probable cause. No such proffer having been made (nor, realistically, do we see how it could have been), the trial court did not abuse its discretion in declining to continue the probable cause hearing.[10] The order providing for detention pending the fact-finding hearing is affirmed.

*Affirmed.*

10. The Sixth Amendment right of a defendant to confront the witnesses against him is not involved here; such a guarantee is basically a trial right. *See, e. g., Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).